892 A.2d 547

**Le'Bon WALKER a/k/a L.B. Walker, Sr.**

**v.**

**STATE of Maryland.**

**No. 21, Sept. Term, 2005.**

Court of Appeals of Maryland.

Feb. 10, 2006.

Fred Warren Bennett (Rachel Marblestone Kamins, Bennett & Bair, LLP, Greenbelt, on brief), for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

In this post-conviction appeal, petitioner asks this Court to decide whether the presumption of prejudice set out in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), applies to his claim of ineffective assistance of counsel under the Sixth Amendment to the United States Constitution. We shall answer this question in the negative and hold that in order to establish ineffective assistance of counsel, petitioner must satisfy the two prong test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): that counsel's performance was deficient and that the deficient performance prejudiced the defendant.

## I.

Petitioner, Le'bon Walker, Patricia Lee (Walker's wife), and Anna L. Hall (Lee's mother), were indicted by the Grand Jury for Montgomery County with conspiracy to commit theft and nine counts of theft, in violation of Md.Code (1957, 1992

Repl.Vol., 1993 Cum.Supp.) Art. 27, § 342.[1] Trial was scheduled for January 18, 1993, and both Walker and his wife were notified of the trial date and location. Walker and his wife were released on bond approximately eight days before trial; they absconded from the jurisdiction. Based upon information provided to the Circuit Court by the Pre–Trial Services Unit, the Circuit Court issued bench warrants for Walker and his wife. Neither defendant was apprehended before the trial date.

Walker's case was consolidated for trial with the cases of his wife, Patricia Lee, and Lee's mother, Anna Hall. On January 18, 1993, the cases were called for trial before the Circuit Court; Walker and Lee failed to appear. Anna Hall was present and was represented by counsel. Following a hearing concerning the absence of Walker and Lee, and over defense counsel's objection, the trial court proceeded *in absentia*. After the jury was sworn, defense counsel again argued to the trial court that his clients could not get a fair trial *in absentia* and said that he believed that they would not want him to participate in the proceedings. The following colloquy took place on January 19, 1993:

"[DEFENSE COUNSEL]: After careful and considerable thought overnight, I believe that the defendants cannot get a fair and impartial trial in this case by being tried *in absentia*. It is clear from our jurisprudence that trials *in absentia* are not the rule in this country, it violates the common law; it violates the Confrontation Clause of the Sixth Amendment to the Constitution of the United States, and it violates Article 21 of the Maryland Declaration of Rights. As the Supreme Court indicated in no uncertain terms in the *Crosby* [*v. United States*, 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993)] case, which we reviewed yesterday, the Supreme Court does not sanction trials *in absentia*. Your Honor recalled, the fact pattern is, I would

---

1. Article 27, § 342 has been recodified as Md.Code (2002, 2005 Cum. Supp.) Criminal Law Article, § 7–104 and has been revised to reflect "theft of property or services with a value of $500 or more."

say identical to the case here and the Court unanimously ruled under [Federal Criminal] Rule [of Procedure] 43 that defendants could not be tried *in absentia.* The Maryland Rule and the Federal Rule are both there for the protection of the defendant, to use as a shield, as brought out yesterday, and I believe because of that and without the defendants' presence here, I cannot effectively represent my clients, and to proceed on their behalf in any way would be a sham. Moreover, in reviewing my conversations with my clients, and their view of the past history of this case, I unhesitatingly believe that they would not want me in any way to participate any further in this trial. Therefore, I will not validate these proceedings by my participation and I respectfully ask this court to excuse my appearance from this case. If the court orders me to remain here, I will do so, but I shall not in any way participate further in the trial.

[THE COURT]: May I ask you this, [defense counsel], do you believe as a strategy of defense of your clients and in their best interests, that it would be appropriate for you not to actively participate in the examination of any witnesses? Is that correct?

[DEFENSE COUNSEL]: I do believe that.

[THE COURT]: Okay. Are you expressing that because you think that is the best way to zealously safeguard the interests of your clients and protect them in this criminal proceeding?

[DEFENSE COUNSEL]: I believe that I could not—by participating in the trial, by cross-examining witnesses, without having the benefit of my clients next to me to talk to and obtain information from them, that it would be ineffective assistance of counsel.

[THE COURT]: Well, recognizing that certainly the ideal situation would be for them to be here with you and able to give you immediate feedback, have you made a decision of your trial strategy in protecting their interests, that it is in their best interests for you to take a passive role?

[DEFENSE COUNSEL]: Yes, I have made that decision.

[THE COURT]: Okay. So, your motion is to be excused from trial?

[DEFENSE COUNSEL]: That would be my motion, that I be excused at this time.

[THE COURT]: Okay. Well, for the reasons I believe that I stated upon the record yesterday, and in the ruling that I make, I will deny the motion for you to be excused from the trial, and I believe as we discussed, you are required to participate in their defense since the trial against them is proceeding, and I believe you have stated upon the record that you propose to follow what you believe to be the rules of professional responsibility that apply to you and the manner which you have chosen to safeguard their rights."

Following the Circuit Court's denial of defense counsel's request to be excused, the Court proceeded with the jury trial. Defense counsel waived opening statement, made no trial motions or objections, did not call any witnesses, and did not cross-examine any of the State's witnesses.[2] During a discussion with the Court regarding jury instructions, defense counsel raised the possibility of arguing jury nullification in his closing argument based on his opinion that it was impossible for Walker and Lee to get a fair trial *in absentia:*

"[DEFENSE COUNSEL]: Your Honor, I was thinking about summation and telling the jury that they should acquit the defendants because this whole proceeding is unconstitutional.

[THE COURT]: Well, I won't permit you to make that argument to the jury. That is not argument, that is jury nullification. That is an improper argument to make for the jury. If your position is ultimately sustained, it would be on the appellate level, not by the jury.

---

**2.** Before the jury was sworn, defense counsel raised objections and cross-examined a pre-trial services supervision caseworker from the Department of Corrections, whom the State called to show that Walker and his wife had absconded.

[DEFENSE COUNSEL]: I have been trying to get some support for that, and I will try to find some additional research."

The court did not allow counsel to argue that the trial *in absentia* was unconstitutional, and counsel renewed his request at the end of the discussion:

"[DEFENSE COUNSEL]: Just for the record, I just want to take exception to the Court's ruling that I cannot argue jury nullification as the Court determined it this morning.

[THE COURT]: Okay. And so that this is clearly on the record, what you had proposed is to argue to the jury that proceeding against [Walker and Lee] in their absence is unconstitutional.

[DEFENSE COUNSEL]: That is correct.

[THE COURT]: And since I think that is contrary to the law, and I give [the jury] binding instructions on the law, I think I have no choice but to [instruct] you that you can't argue that. Thank you."

The jury found Walker and Lee guilty on all counts alleged in the indictment.[3] Nine months later, Walker and Lee were apprehended in Zambia, returned to the United States, and sentenced to a term of incarceration of twenty-four years in the Division of Correction with credit for 390 days for time served. Walker noted a timely appeal to the Court of Special Appeals, and this Court granted certiorari on its own initiative to consider whether a trial court may try a defendant *in absentia* consistent with a defendant's common law right to be present at trial and a Sixth Amendment right to confrontation. *Walker v. State,* 338 Md. 253, 658 A.2d 239 (1995) (*"Walker I "*). This Court affirmed, holding that the trial court did not err in proceeding to trial in the defendant's absence, leaving

---

**3.** The jury found Hall guilty of one count of conspiracy to commit theft and seven counts of theft over value of $300. The jury was unable to reach a verdict as to the two other counts of theft over value of $300, and the State subsequently entered a nolle prosequi as to those two counts.

for another day the question of effective assistance of counsel. *Id.* at 261–62, 658 A.2d at 243.

Walker filed a petition for post-conviction relief in the Circuit Court for Montgomery County pursuant to the Uniform Postconviction Procedure Act, Md.Code (2001, 2005 Cum. Supp.) Criminal Procedure Article, § 7–102, alleging, *inter alia,* that defense counsel's trial strategy was merely to do nothing at all, which amounts to a "total breakdown" in the adversarial process, thereby presumptively prejudicing him under *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The Circuit Court denied relief on all grounds, ruling that Walker was not prejudiced by his counsel's performance. In rejecting Walker's presumption of prejudice argument under *Cronic,* the post-conviction Court stated as follows:

"The first ground that counsel is seeking, Mr. Walker, is seeking, to set aside the verdict in this case and to assign a new trial to Mr. Walker is the application of the *United States v. Cronic* decision. That's when the decision of counsel to refuse to participate in the trial in this case without the consent of client's counsel, is a failure to subject the prosecution's case to meaningful adversarial testing. That there is this presumption of unreliability. I have to say that I agree with what [*United States v. Sanchez,* 790 F.2d 245 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986)] says. I find that here, Mr. Walker's own obstructive conduct precluded his attorney from pursuing an intelligent [and] active defense. Therefore, the concerns of *Cronic* are not invoked. Therefore, the general test of effectiveness of counsel applies under *Strickland.* I would also point out that I've listened to [defense counsel's] testimony. I've reviewed the record and [defense counsel's] testimony. Although, I understand what you are saying, that there is nothing that reflects the actual consent, or direction or instruction by Mr. Walker from [defense counsel] not to participate, but he did have voluminous discovery, six months of pre-trial preparation, [and] consultation with his client. It was [defense counsel's] perception,

based upon his discussions with Mr. Walker, that he would not have wanted [defense counsel] to participate in the trial. In addition, the conduct of the trial [c]ourt in this regard is, again, appropriate to the record. That is Judge Harrington meticulously went over ... [defense counsel's] decision. [Defense counsel had] every opportunity to participate. [Judge Harrington] specifically asked him on the record: do you believe as a strategy of defense of your clients and in their bests interest that it would be appropriate for you not to actively participate in the examination of any witnesses. Is that correct? [Defense counsel] responded, that he did believe that, which is consistent with what he said here on the witness stand.

[H]e believed it was in Mr. Walker's best interest to not zealously represent Mr. Walker at trial. If I were to set aside the verdict in this case, it would in essence [reward] Mr. Walker for his efforts to sabotage this case and reward him by allowing him to intentionally sabotage his own defense. I agree that, as was said in the *Sanchez* case, that would 'defy both the purposes of the Sixth Amendment and common sense.' "

Walker noted a timely appeal to the Court of Special Appeals. The intermediate appellate court, in a well-reasoned and thoroughly researched opinion, affirmed, holding that *Cronic* was inapplicable, that the Circuit Court properly applied the two prong test announced in *Strickland*, and that Walker's ineffective assistance of counsel claim was without merit. *Walker v. State*, 161 Md.App. 253, 868 A.2d 898 (2005). Judge James R. Eyler, writing for the unanimous panel, noted that "[t]he presumption of ineffectiveness is very limited.... and includes only those cases where a defendant is actually or constructively denied counsel altogether, or where the state actively interferes with counsel's consultation with or representation of a defendant." *Id.* at 263, 868 A.2d at 904. The court explained as follows:

"The State did not interfere with counsel's assistance in any way. [Defense counsel] was fully prepared to try the case. [Petitioner] does not allege that he was prevented by the

State from consulting with [defense counsel] in any way, or at any time, before, during, or after the trial. [Defense counsel] never testified to any conflict of interest at the post-conviction hearing, nor does [petitioner] argue that a conflict of interest existed. Therefore, this case does not fall into one of the three categories of cases in which the Supreme Court has determined that ineffectiveness or prejudice should be presumed."

*Id.* at 268, 868 A.2d at 907.

We granted Walker's petition for Writ of Certiorari to decide the following question:

"Should prejudice be presumed under *United States v. Cronic* where trial counsel, by his silence and non-participation at Mr. Walker's first jury trial, failed to subject the prosecution's case against Mr. Walker to 'meaningful adversarial testing' and denied Mr. Walker his Sixth Amendment right to the effective assistance of counsel?"

*Walker v. State,* 387 Md. 462, 875 A.2d 767 (2005). We agree with the Court of Special Appeals and shall affirm the denial of petitioner's request for post-conviction relief.

## II.

Petitioner's sole argument in this appeal is that because his defense counsel did not participate at trial, he was denied effective assistance of counsel under the Sixth Amendment to the United States Constitution and that prejudice should be presumed under *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).[4] By remaining silent, petitioner contends, defense counsel failed to subject the State's case to "meaningful adversarial testing" and that trial counsel's "complete lack of activity on [his] behalf" had the same effect as if he had no representation in the courtroom at all, and thus, counsel was constructively absent from the proceeding.

---

4. Petitioner does not argue before this Court that his counsel was ineffective under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The State argues that *United States v. Cronic* does not apply to petitioner's claim because defense counsel was present throughout the entire trial and that counsel's limited participation was based on a trial strategy designed to benefit petitioner. Aspects of this strategy included a vehement argument that trial *in absentia* was unconstitutional and an effort to argue jury nullification on the grounds that the proceeding was unconstitutional. Further, the State contends that trial counsel's strategy was based upon counsel's determination of Walker's wishes and his best interests under the circumstances. In addition to undertaking a legitimate trial strategy, the State contends that trial counsel did not leave the State's case "untested." The State notes that trial counsel attended trial and bench conferences, responded to the trial court's inquiries regarding admission of exhibits, and that the State's evidence was challenged by counsel for Walker's codefendant, Hall.

### III.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel and applies to the states through the Due Process Clause of the Fourteenth Amendment.[5] *See Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 795–96, 9 L.Ed.2d 799 (1963). It is beyond question that the right to counsel is the right to effective assistance of counsel. *See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063.

In order to assess the adequacy of counsel's assistance under the Sixth Amendment, ordinarily we apply the two-part test enunciated by the Supreme Court in *Strickland,* which requires that a defendant show that counsel's representation was deficient, *i.e.,* that it fell below an objective standard of reasonableness, and that any deficiency in counsel's

---

5. The Sixth Amendment provides, in pertinent part, as follows:
    "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."

performance was prejudicial. *Id.* at 687–88, 104 S.Ct. at 2064; *see Florida v. Nixon*, 543 U.S. 175, 188–89, 125 S.Ct. 551, 561–62, 160 L.Ed.2d 565 (2004); *Bowers v. State*, 320 Md. 416, 424–25, 578 A.2d 734, 739 (1990). Prejudice requires a showing that counsel's errors were so egregious that they deprived the defendant of a fair trial—a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. We have framed the test for prejudice under *Strickland* as requiring the petitioner to show that there is a substantial possibility that the outcome of the proceeding would have been different. *Bowers*, 320 Md. at 426–27, 578 A.2d at 738.

In deciding a petitioner's ineffective assistance claim under *Strickland*, "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. When a court decides an ineffective assistance of counsel claim, it must judge the reasonableness of counsel's conduct on the facts of the particular case, viewed from the time of counsel's conduct. *Id.* at 690, 104 S.Ct. at 2066. Further, the court may determine the reasonableness of counsel's actions in accordance with petitioner's statements and actions because counsel's conduct typically is based on "informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* at 691, 104 S.Ct. at 2066.

In *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided the same day as *Strickland*, the Supreme Court established that certain deficient performances of counsel justified a per se presumption of ineffectiveness under the Sixth Amendment. *See id.* at 658–659, 104 S.Ct. at 2046. The Court identified three situations implicating the right to counsel that involved circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658, 104 S.Ct. at 2046–47. The first situation was where the accused was completely denied counsel. *Id.* at 659, 104 S.Ct. at 2047. Complete denial of counsel includes, for example, "when counsel was either totally absent, or prevented from assisting the

accused during a critical stage of the proceeding." *Id.* at 659 n. 25, 104 S.Ct. at 2047 n. 25. The second situation warranting a similar presumption of prejudice was "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing" because this results in an "adversary process itself [that is] presumptively unreliable." *Id.* The final situation was in cases similar to *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where the accused faces circumstances in which it is not likely that any attorney could provide effective assistance.[6] *Id.* at 659–661, 104 S.Ct. at 2047–48. With the exception of these three situations, a defendant must articulate "how specific errors of counsel undermined the reliability of the finding of guilt," *i.e.,* the defendant must prove actual prejudice. *See Cronic,* 466 U.S. at 659 n. 26, 104 S.Ct. at 2047 n. 26.

██ Petitioner argues that his claim fits within the second exception identified in *Cronic* because his trial counsel, although present in the courtroom, failed to subject the State's case against Walker to "meaningful adversarial testing," thereby warranting a presumption of prejudice. We disagree. Since *Cronic* was decided, the Supreme Court has made clear that the *Cronic* exception to the general rule requiring proof of prejudice based on deficient performance is a very narrow exception, and that for the exception to apply, the "[attorney's] failure must be complete." *Florida v. Nixon,* 543 U.S. 175,

---

6. In *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the defendants had been indicted for rape. The trial judge appointed "all members of the bar" to represent them for the purpose of arraignment shortly before the trial. *Id.* at 56, 53 S.Ct. at 59. An out-of-state attorney appeared on the day of the trial, wishing to represent the defendants, but requested a continuance for more time to prepare the defendants' case and to learn the local procedure. The trial court decided that the out-of-state attorney would represent the defendants immediately with whatever help the local bar could provide. Under these circumstances, the Court did not examine the counsel's actual representation of his clients at trial, but deemed the trial inherently unfair, presuming prejudice without any further inquiry. *See id.* at 58, 53 S.Ct. at 60. The Court held in *Powell* that the failure of the trial court to give the defendants a reasonable time and opportunity to obtain adequate counsel violated the Due Process Clause of the Fourteenth Amendment. *Id.* at 71, 53 S.Ct. at 65.

190, 125 S.Ct. 551, 562, 160 L.Ed.2d 565 (2004) (quoting *Bell v. Cone,* 535 U.S. 685, 696–697, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914 (2002)).

In *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), a death penalty case before the Court on review of a grant of the writ of habeas corpus by the United States Court of Appeals for the Sixth Circuit, the Court reversed, holding that the *Strickland* test rather than *Cronic* exception applied in analyzing petitioner's claim of ineffective assistance of counsel at his sentencing hearing. *Id.* Petitioner argued that in the sentencing proceeding, his counsel failed to "mount some case for life" after the State introduced evidence in the sentencing hearing and made closing argument. *Id.* at 696, 122 S.Ct. at 1851. The Court rejected his argument, explaining the applicability of *Cronic* as follows:

> "When we spoke in *Cronic* of the possibility of presuming prejudice based on the attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said 'if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.' Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of Cronic, the difference is not of degree but of kind."

*Id.* at 696, 122 S.Ct. at 1851 (citations omitted). In analyzing defense counsel's decision to waive summation, the Court noted that considering the options available to counsel, "[n]either option ... [s]o clearly outweighs the other that it was objectively unreasonable for the Tennessee Court of Appeals to deem counsel's choice to waive argument a tactical decision about which competent lawyers might disagree." *Id.* at 702, 122 S.Ct. at 1854. The Court found that because defense counsel failed to challenge specific aspects of the State's case rather than entirely fail "to subject the [State's] case to meaningful adversarial testing," *Strickland* provides the proper framework for reviewing the defendant's ineffective assis-

tance of counsel claim. *See id.* at 697–98, 122 S.Ct. at 1851–52.

In *Florida v. Nixon,* 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), the Supreme Court again emphasized the limited availability of the *Cronic* exception. The Court reiterated as follows:

"*Cronic* recognized a narrow exception to *Strickland*'s holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense. *Cronic* instructed that a presumption of prejudice would be in order in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.' The Court elaborated: '[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.' We illustrated just how infrequently the 'surrounding circumstances [will] justify a presumption of ineffectiveness' in *Cronic* itself. In that case, we reversed a Court of Appeals ruling that ranked as prejudicially inadequate the performance of an inexperienced, under-prepared attorney in a complex mail fraud trial."

*Id.* at 190, 125 S.Ct. at 562 (citations omitted).

This Court has recognized the narrow reach of *Cronic* in analyzing ineffective assistance of counsel claims. *See e.g., Redman v. State,* 363 Md. 298, 311, 768 A.2d 656, 663 (2001). In *Redman,* we embraced the following interpretation of *Cronic,* as stated by the United States Court of Appeals for the First Circuit:

"In our view, the Court's language in *Cronic* was driven by the recognition that certain types of conduct are in general so antithetical to effective assistance—for example, lawyers who leave the courtroom for long stretches of time during trial are unlikely to be stellar advocates in any matter—that a case-by-case analysis simply is not worth the cost of

protracted litigation. No matter what the facts of a given case may be, this sort of conduct will almost always result in prejudice. But attorney errors particular to the facts of an individual case are qualitatively different. Virtually by definition, such errors 'cannot be classified according to likelihood of causing prejudice' or 'defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid.' Consequently, the Court has declined to accord presumptively prejudicial status to them."

*Redman,* 363 Md. at 311–12, 768 A.2d at 663 (quoting *Scarpa v. DuBois,* 38 F.3d 1, 12–13 (1st Cir.1994)) (citations omitted).

Similarly, the Court of Special Appeals rejected Walker's argument that prejudice should be presumed under *Cronic.* The court reasoned as follows:

"The facts in this case are more similar to the facts of *Warner* [*v. Ford,* 752 F.2d 622 (11th Cir.1985)] than the facts of *Martin* [*v. Rose,* 744 F.2d 1245, 1250–51 (6th Cir.1984)]. Though Walker professed his innocence before trial, and continues to deny that he was guilty of the charges brought against him, the documentary and testimonial evidence against him was 'overwhelming.' [Petitioner] was one of three co-defendants, and though his own attorney did not actively participate in trial, counsel for Ms. Hall did challenge the case presented by the State. Finally, [defense counsel] had six months to prepare for the trial. He received 'voluminous' discovery, and discussed the case with his client several times prior to [petitioner's] flight from the country. Furthermore, [defense counsel] testified that he was prepared to actively represent [petitioner] at trial, but chose not to deliberately because of [petitioner's] absence. Under the reasoning of the Eleventh Circuit set forth in *Warner,* prejudice should not be presumed in this case."

*Walker v. State,* 161 Md.App. 253, 270–71, 868 A.2d 898, 908 (2005). In addition, the court pointed out the practical effect of applying the *Cronic* standard as essentially abolishing trial *in absentia.* The court noted as follows:

"We fear that if we allow a new trial in this case, it will open the door for criminal defendants to engineer an 'automatic' new trial by failing to appear for trial. If defense counsel, with or without consent, then chooses not to participate, and if the defendant is not successful on direct appeal, the defendant will obtain a new trial on ineffective assistance of counsel grounds. We decline to open the door for such manipulation of the system."

*Id.* at 273, 868 A.2d at 910. We agree with the Court of Special Appeals and also reject petitioner's argument. Defendants would have a "foolproof defense" for a new trial if prejudice were presumed in every case in which the defense counsel with an absent client elects to remain silent or participate minimally. *Cf. Toomey v. Bunnell,* 898 F.2d 741, 744 n. 2 (9th Cir.1990); *Harding v. Lewis,* 834 F.2d 853, 859 (9th Cir.1987).

Courts around the country have interpreted *Cronic* very narrowly, thereby requiring a showing of actual prejudice rather than presuming prejudice. *See, e.g., Moss v. Hofbauer,* 286 F.3d 851, 862 (6th Cir.2002) (refusing to apply *Cronic* where defense counsel failed to make an opening statement, cross-examine two witnesses, make objections, and call defense witnesses, because the omitted conduct was "not the equivalent of being physically or mentally absent" from the courtroom); *Chadwick v. Green,* 740 F.2d 897, 901 (11th Cir.1984) (holding that "when *Cronic* and [*Strickland* ] are read in conjunction, it becomes evident that *Cronic*'s presumption of prejudice applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all"). *See also Turrentine v. Mullin,* 390 F.3d 1181, 1207–09 (10th Cir.2004); *James v. Harrison,* 389 F.3d 450, 454–56 (4th Cir.2004); *Fink v. Lockhart,* 823 F.2d 204, 206 (8th Cir.1987); *United States v. Sanchez,* 790 F.2d 245, 254 (2d Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986); *State v. Davlin,* 265 Neb. 386, 658 N.W.2d 1, 13 (2003).

In the instant case, as a result of Walker's and Lee's failure to appear for trial, defense counsel found himself in the unenviable position of having to represent absent defendants. As a trial strategy, he decided essentially to remain silent, to protect the record as best as he could under the circumstances, to participate minimally, and to argue jury nullification—the latter of which the Circuit Court did not allow. Under the circumstances presented herein, the strategy counsel employed was not such that it falls within the narrow exception to warrant a presumption of prejudice. Defense counsel's conduct was not "so antithetical to effective assistance" that the *Cronic* presumption of prejudice should apply. *See Scarpa,* 38 F.3d at 12. Moreover, his conduct did not amount to the complete failure of representation at every aspect of the trial proceeding, as contemplated by the *Bell* Court. *See Bell,* 535 U.S. at 697, 122 S.Ct. at 1851.

In a motions hearing on January 18, 1993, defense counsel argued forcefully that Walker did not "acquiesce" to be tried *in absentia.* Prior to the beginning of Walker's trial, on January 19, 1993, defense counsel, once again, argued vehemently that trial of Walker *in absentia* was unfair and in violation of the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights, and announced that he would not "in any way participate in the trial." Counsel characterized his decision not to participate in the proceedings as a strategic choice because he "unhesitatingly believed that [his clients] would not want [him] in any way to participate further at this trial," and that he could not participate in the trial "by cross-examining witnesses, without having the benefit of [his clients next to him]" to obtain information and engage in consultations.

The following exchange occurred between Walker's post-conviction counsel and defense counsel at Walker's post-conviction proceeding on July 31, 2003 regarding defense counsel's trial representation of Walker:

"[POST CONVICTION COUNSEL]: You have put on the record that you believe that your clients would not want you in any way to participate.

[DEFENSE COUNSEL]: That is correct.

[POST CONVICTION COUNSEL]: That was done though, was it not, sir, without any consultation with Mr. Walker?

[DEFENSE COUNSEL]: That is correct.

[POST CONVICTION COUNSEL]: And without any consultation with, since you had two clients at that time, Ms. Walker.

[DEFENSE COUNSEL]: That is correct.

[POST CONVICTION COUNSEL]: That was your opinion.

[DEFENSE COUNSEL]: Absolutely.

[POST CONVICTION COUNSEL]: But your opinion was not based upon legal research as to what your duty was as opposed to what you thought you should do, correct?

[DEFENSE COUNSEL]: My opinion on that specific question was [based on] my conversations with my clients and how they viewed the trial, at least to that statement, that I believe that my clients would not want me to participate. That was my own belief.

[POST CONVICTION COUNSEL]: That was because you had, had discussions prior to trial. Mr. Walker believed that this was, in some respects a racist proceeding against him. He had an interracial marriage, correct?

[DEFENSE COUNSEL]: That is correct.

[POST CONVICTION COUNSEL]: And he had no great love for [the prosecutor] correct?

[DEFENSE COUNSEL]: That was an understatement, yes."

This post-conviction colloquy further supports the conclusion that defense counsel's minimal participation was a strategic decision, borne out of unusual circumstances, rather than a constructive denial of counsel, which would require a presumption of prejudice under *Cronic*. *See Martin v. McCotter*, 796 F.2d 813, 820 (5th Cir.1986) (concluding "that counsel's decision to forego argument at the sentencing phase of Martin's trial did not constitute a constructive denial of counsel such as to render a showing of *Strickland* prejudice unnecessary");

*Vickers v. State*, 320 Ark. 437, 898 S.W.2d 26, 28 (1995) (recognizing that "matters of trial tactics and strategy, which can be matters of endless debate by experienced advocates, are not grounds for post-conviction relief"). Defense counsel further testified at the post-conviction proceeding that he had been Walker's counsel for approximately six months, had conducted "voluminous discovery" and had "many, many conversations" with Walker before Walker absconded. Counsel was prepared to actively represent Walker, and once Walker absconded, counsel's decisions were grounded in what he thought his client would want, based on his interactions with him prior to trial.

Petitioner directs our attention to a few cases in which courts have held that the attorney's refusal to participate in the trial justified application of a presumption of prejudice under the Sixth Amendment. *See United States v. Swanson*, 943 F.2d 1070 (9th Cir.1991); *Martin v. Rose*, 744 F.2d 1245 (6th Cir.1984); *State v. Harvey*, 692 S.W.2d 290 (Mo.1985). We find these cases distinguishable from the case *sub judice*.

In *United States v. Swanson*, 943 F.2d 1070 (9th Cir.1991), the defendant was charged with armed robbery. Defense counsel acknowledged his client's guilt in closing argument, conceding the element of intimidation and that his client was the perpetrator of the offense. *Id.* at 1074. Furthermore, he informed the jury repeatedly that the defendant's guilt beyond a reasonable doubt could not be questioned. *See id.* at 1076–1078. The United States Court of Appeals for the Ninth Circuit viewed this conduct as constructive denial of counsel during a critical stage of the proceeding, thereby warranting a presumption of prejudice under *Cronic*. *See id.* at 1075–76. The court reasoned that when the defense attorney argued to the jury that no reasonable doubt existed, the defense "shouldered part of the government's burden of persuasion." The court pointed out that the government failed to identify any strategy that could justify defense counsel's "betrayal of his client." *Id.* at 1075. Here, Walker's attorney determined that the best strategy was not to actively participate. He neither

conceded his client's guilt nor shouldered the State's burden of proof.

In *State v. Harvey*, 692 S.W.2d 290 (Mo.1985), prior to jury selection, defense counsel requested a continuance, noting that he was "totally unprepared" to begin the defense of his client in a capital murder case. *Id.* at 291. Upon the court's denial of his request, defense counsel announced his intention to only sit at the counsel table, and not participate, asserting that he was unprepared and physically exhausted because of his work in another capital murder case. *Id.* At both trial and sentencing, defense counsel remained almost entirely mute, participating only in voir dire and filing various post-trial motions. *Id.* at 293. In the sentencing phase, counsel presented no evidence as to mitigation. *Id.* at 292–93. On direct appeal, the Missouri Supreme Court rejected the contention that defense counsel's minimal participation in the proceedings was a strategic choice, consented to by the defendant, and thus, held that the defendant was constructively denied counsel within the meaning of *Cronic.* *Id.* at 293. An important factor in the court's decision was that the defendant was present during the trial, and the trial court had not inquired as to whether the defendant knowingly and voluntarily was relinquishing his right to effective assistance of counsel. *See id.* at 293.

In the case *sub judice*, trial counsel had represented Walker for six months, conducted discovery, and was prepared to put on Walker's defense. It was the defendant who impeded this representation by failing to appear for trial. Furthermore, in *Harvey*, defense counsel did not discuss this strategy of non-representation with his client, while in the instant case, defense counsel assumed attorney silence was the strategy Walker would want him to employ under the circumstances. In sum, Walker's attorney made a strategic calculation in an unusual situation, which is a far cry from Harvey's counsel, who was unprepared and searching for a way out of the case.

In *Martin v. Rose*, 744 F.2d 1245 (6th Cir.1984), the defendant was indicted for the offenses of criminal sexual conduct in

the first degree, incest, sodomy, and crimes against nature, arising from an incident involving him and his two minor stepdaughters. *Id.* at 1247. The trial court denied defense counsel's motion to dismiss and motion for a continuance—in which he alleged that he was unprepared to the try case. *Id.* Thereafter, defense counsel, without fully explaining the situation to his client or obtaining his client's consent, did not cross-examine any state witnesses, make any objections, call any witnesses for the defense, make any closing argument, or object to any part of the court's charge to the jury. *Id.* On appeal from denial of habeas relief, the United States Court of Appeals for the Sixth Circuit held that this "lack of participation deprived Martin of effective assistance of counsel at trial as thoroughly as if [counsel] had been absent," warranting a *Cronic* presumption of prejudice. *Id.* at 1250–51. The court held that even though counsel's actions were unquestionably trial strategy, they did not constitute sound trial strategy. *Id.* at 1249. The court reasoned that: Martin had denied participation in the offense; he had a strong defense that he could present; he had no criminal record and could take the stand and testify on his own behalf, and that the State's case, based solely on the step-daughters' testimony, could have been challenged by cross-examination. *Id.* at 1250–51.

In the instant case, Walker's post-conviction counsel does not allege which arguments the jury did not hear and which evidence it did not see by trial counsel's failure to participate more fully in Walker's trial. In *Martin*, attorney silence was an unreasonable trial tactic for a client on trial for criminal sexual conduct because had Martin's attorney participated, "Martin could have testified that he did not commit the crimes with which he was charged ... [and] [e]ven if Martin had not testified, the girls' testimony could have been subjected to cross-examination or questioned in final argument." *Id.* at 1250–51. Unlike, *Martin*, the case against Walker was built upon substantial documentary and testimonial evidence. Here, the record reflects no defense Walker could have asserted if counsel had behaved differently.

Moreover, in the instant case, defense counsel argued repeatedly to the Circuit Court that trial *in absentia* was unconstitutional, cited rules to the Court, attended bench conferences during the trial, sought to make a closing argument, and responded to the Court's inquiries regarding admission of State exhibits. As the State points out, counsel for co-defendant Hall challenged the State's evidence in front of the jury, which was to the benefit of all three defendants.

We note that in the cases cited by petitioner, each defendant was present at trial and never waived his right to effective assistance of counsel. Even if a defendant absconds prior to trial, the right to effective assistance of counsel is not waived automatically. As petitioner points out, it is well-established that a defendant's waiver of the Sixth Amendment right to counsel must be knowing and intelligent. *See Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *State v. Renshaw*, 276 Md. 259, 265–66, 347 A.2d 219, 224 (1975). By failing to appear, however, the defendant puts the attorney in the difficult position of deciding how best to put on a defense if a continuance is denied and the trial judge proceeds *in absentia*. Whether non-participation or silence is a reasonable strategy should depend upon the circumstances of each case. *See Warner v. Ford*, 752 F.2d 622, 625 (11th Cir.1985).

"Silent strategy" is the phrase often used to describe an attorney's decision either not to participate at trial or to participate minimally. *Cf. Warner*, 752 F.2d at 625; *Walker I*, 338 Md. at 261, 658 A.2d at 243; Keith Cunningham–Parmeter, *Dreaming of Effective Assistance*, 76 Temp. L.Rev. 827, 869–875 (2003). Some courts have recognized an attorney's decision to remain silent as a legitimate, strategic choice worthy of deference under *Strickland*. *See generally United States v. Sanchez*, 790 F.2d 245 (2nd Cir.), *cert. denied*, 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986) (applying *Strickland* to defendant's ineffective assistance of counsel claim where defendant had absconded prior to trial and trial counsel's participation was limited to objection to trial *in*

*absentia* and a flight instruction and to moving for judgment of acquittal); *Warner v. Ford*, 752 F.2d 622 (11th Cir.1985) (applying *Strickland* to defendant's ineffective assistance of counsel claim, where trial counsel's participation was limited to a motion for a directed verdict, a request for a mistrial, and a recommendation that his client not take the witness stand). *See also Martin v. McCotter*, 796 F.2d 813 (5th Cir.1986) (applying *Strickland* to defendant's ineffective assistance of counsel claim, where trial counsel remained silent at the sentencing phase of his client's trial).

In *Warner v. Ford*, 752 F.2d 622 (11th Cir.1985), the United States Court of Appeals for the Eleventh Circuit considered a claim of ineffective assistance of counsel involving defense counsel's silence during trial in the face of overwhelming evidence of guilt. *Id.* at 625. Two co-defendants were tried in the same proceeding with Warner, and Warner was convicted of four counts of armed robbery. *Id.* at 623–24. Warner's attorney did not participate in the trial, except to move for a directed verdict on one count, request a mistrial three times, and recommend that his client not take the stand when his client was called by his co-defendants to testify in their defenses. *Id.* at 624. On appeal from the District Court's denial of habeas, the Eleventh Circuit applied the *Strickland* analysis to Warner's claim of ineffective assistance of counsel, deciding that a case-by-case inquiry is more suitable than a presumption of prejudice, when the "silent strategy" is at issue. *Id.* at 625. The Eleventh Circuit explained as follows:

"Silence can constitute trial strategy. Whether that strategy is so defective as to negate the need for a showing of prejudice to establish ineffective assistance of counsel must be judged on a case-by-case basis. [*Strickland* ] has established that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance.' Thus, in order for a petitioner with an ineffective assistance claim to prevail over his former counsel's assertion of strategy, he must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "

*Id.* at 625 (citations omitted). The *Warner* Court concluded that defense counsel's representation of Warner was not so defective as to entitle Warner to relief without any showing that his attorney's conduct prejudiced him. *Id.*

In *United States v. Sanchez*, 790 F.2d 245 (2d Cir.), *cert. denied*, 479 U.S. 989, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986), Sanchez did not appear for trial on the scheduled date. His attorney, the co-defendant, and the co-defendant's attorney were present, and the trial proceeded in Sanchez's absence. *Id.* at 248. Defense counsel engaged in "limited defense activity," consisting of objecting to the trial itself, a request for a flight instruction, and a motion for judgment of acquittal. *Id.* at 248, 253. The jury returned a verdict of guilty against Sanchez on two counts, and Sanchez claimed ineffective assistance of counsel. *Id.* at 248.

The United States Court of Appeals for the Second Circuit rejected Sanchez's ineffective assistance of counsel claim, refusing to invoke *Cronic* where a "defendant by his own obstructive conduct precludes his counsel from pursuing an intelligent [and] active defense." *Id.* at 254. The Second Circuit recognized the silent strategy as appropriate in some cases, noting as follows:

"Here, there is no evidence that Sanchez made any effort to communicate with or otherwise cooperate with his attorney. There is no evidence that Sanchez consulted with his attorney regarding his decision not to attend the trial, and not to be available during the weeks preceding trial. Where an attorney is confronted with such a client, whose uncooperativeness precludes any reasonable basis for an active defense, the strategy of silence—perhaps in hopes that the government will produce insufficient evidence or that the government or court will commit reversible error—may actually constitute a defense strategy. Certainly, the right to counsel does not impose upon a defense attorney a duty unilaterally to investigate and find evidence or to pursue a fishing expedition by cross-examination, or to present opening or closing remarks on the basis of no helpful informa-

tion, or to object without purpose, on behalf of an uncooperative and unavailable client."

*Id.* at 253 (citations omitted).

■ Simply because "silence" is the product of trial strategy, however, does not insulate attorney conduct from review. Strategic decisions must nonetheless be supported by reasonable professional judgment. *See Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Whether "silence" as a strategy is reasonable is to be determined on a case by case basis, under the standards set forth in *Strickland. See id.* at 691, 104 S.Ct. at 2066 (noting that "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on the information supplied by the defendant").

We hold that the post-conviction court did not err in rejecting the *Cronic* standard in this case and that *Strickland v. Washington* provides the proper framework for review of Walker's ineffective assistance of counsel claim under the Sixth Amendment.

***JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.***

***COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.***

BELL, C.J., dissents.

Dissenting Opinion by BELL, C.J.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) enunciated the test for resolving a defendant's claim of ineffectiveness of counsel, indicating in the process that the critical inquiry "must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 685–86, 104 S.Ct. at 2063–64, 80 L.Ed.2d at 692–93. The test the Court announced assesses

the likelihood that the assistance rendered pursuant to counsel's obligation "to make the adversarial testing process work in the particular case," *id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695, was "outside the wide range of professionally competent assistance." *Id.* It stated the test:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.[1] The Court also was clear: "Judicial scrutiny of counsel's performance must be highly deferential." *Id.*

*United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668 (1984) is an exception to *Strickland v. Washington*; it presumes unconstitutionality, under the Sixth Amendment right to effective assistance of counsel, when defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." 466 U.S. at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668. The purpose of this, and the other exceptions outlined in *Cronic*, is to avoid lengthy, costly, and unnecessary litigation when the adversarial process clearly has been compromised. *Id.* at 658, 104 S.Ct. at 2046, 80 L.Ed.2d at 667. In the situations identified in *Cronic*, 466 U.S. at 658–59, 104 S.Ct. at 2046–47, 80 L.Ed.2d at 667–68, the circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," *id.* (*See also Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696, stating that "[p]rejudice . . . is so likely that case-by-case inquiry into prejudice is not

---

1. This Court has characterized the test somewhat differently, substituting "reasonable possibility," *Bowers v. State,* 320 Md. 416, 427, 578 A.2d 734, 739 (1990), for the phrase, "reasonable probability," used by *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). We explained: " 'Substantial possibility,' of course, is the term we used to define the 'may well' standard we adopted in *Yorke [v. State,* 315 Md. 578, 556 A.2d 230 (1989)]. We think the standard, as so defined, aptly describes the prejudice standard the Supreme Court adopted in *Strickland.*"

worth the cost."), and they "involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696 (citing *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668.).

Because *Cronic* is an exception to *Strickland* and contemplates a meaningful adversarial testing of the State's case, as with *Strickland, see* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697–98, deference to trial strategy must be paid when determining its applicability. *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046, 80 L.Ed.2d at 667. A trial strategy, to be entitled to deference, as contemplated by *Cronic,* I would have thought, would have the intent, if not the effect, and a reasonable possibility, *see Bowers v. State,* 320 Md. 416, 427, 578 A.2d 734, 739 (1990), of furthering the defendant's interests. Thus, the strategy should be a potentially effective approach, that is not only available, but which also has a reasonable, legally valid basis.

Counsel for Le'Bon Walker, the petitioner, after making the pre-trial argument that it was unconstitutional to try the petitioner *in absentia,* and, when that argument was unsuccessful, attempting to excuse himself from the trial and later proffering to the court a jury nullification argument, which was also rejected, remained silent throughout the trial, failing to make an opening statement to the jury, to call witnesses, to cross examine the state's witnesses, to make objections, to make any motions or to make any substantive closing argument to the jury. This strategy, characterized by these omissions, the majority effectively says, *see Walker v. State,* 391 Md. 233, 256, 892 A.2d 547, 557–58 (2006), constituted a reasonable trial strategy, a meaningful adversarial testing of the prosecution's case within the meaning of *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668, and, thus, entitled to deference.

I do not agree. First, I question whether counsel's actions reasonably can be considered a trial strategy; certainly, it

cannot be logically characterized as reasonable. Apparently, the sole basis for counsel's failure, refusal is perhaps more accurate, to participate in the trial was his intention to make a jury nullification argument. Such an argument is improper, *see Stevenson v. State,* 289 Md. 167, 178, 423 A.2d 558, 564 (1980); *Franklin v. State,* 12 Md. 236 (1858), and, thus, impermissible. Counsel should have known, therefore, that he would not be allowed to argue that the jury could nullify the discretionary ruling entrusted to, and made by, the trial court; he should have known that, because such an argument is improper, it would be determined by the trial court to be unreasonable and would be prohibited. It should have been clear to any reasonable attorney that a jury nullification argument would be a fruitless gesture, a failure. It is just as clear, or should be, that if a "trial strategy" simply has no chance of furthering counsel's client's interests, it cannot rightly, or in any sense, be considered "reasonable" and is simply not entitled to even the slightest deference. Here counsel's "strategy" was no strategy at all.[2]

Unless counsel's refusal to participate at trial was trial strategy, it is absolutely clear, beyond any doubt, that counsel failed to subject the prosecution's case to any meaningful adversarial testing and, thus, failed to provide effective assistance under *Cronic.* Indeed, on this record it is quite clear that he neither tried to do so, nor intended to.

Certainly the fact that the petitioner's counsel made one, initial argument to the court, outside the jury's presence, that the *in absentia* issue, decided only a short time earlier, rendered him incapable of fully representing his client did not meaningfully test the prosecution's case. In doing so, he was, in essence, arguing a point which had already been decided by

---

**2.** Holding in reserve, for use during closing arguments to the jury, of a jury nullification argument, in which the jury would be asked to disregard all that had transpired because the court chose to proceed with trial in the defendant's absence is about as reasonable and as likely to succeed as holding in abeyance an argument already rejected by the trial court during pre-trial proceedings, to be sprung on the jury during closing argument.

the court and, thus, was not an issue in the prosecution's case against the petitioner which it was required to prove. Nor was the jury nullification argument a testing of the State's case and it was not intended to be. It merely would have invited the jury to disregard the State's evidence and the trial court's discretionary ruling, on policy grounds, not reject the State's case on the merits.

The majority, relying on *Warner v. Ford*, 752 F.2d 622 (11th Cir.1985), and *U.S. v. Sanchez*, 790 F.2d 245 (2nd Cir.1986), holds that the petitioner's counsel, by not participating in the petitioner's *in absentia* trial, acted strategically. *Walker v. State*, 391 Md. 233, 257–60, 892 A.2d 547, 561–63 (2006). It determined that, because the court "must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance," *id.* at 258, 892 A.2d at 562, a petitioner must overcome the presumption that his counsel's actions constituted trial strategy. Accordingly, it opines, a case-by-case analysis under *Strickland* is the proper procedure. *Id.* at 258–60, 892 A.2d at 562–63. Neither *Warner* nor *Sanchez* proves the majority's point regarding the case *sub judice*.

In *Warner*, defense counsel did not participate in voir dire, made no pretrial motions, made no opening statement, did not cross examine the State's witnesses, did not call any defense witnesses, did not object to any of the State's evidence, offered no defense evidence, and made no closing argument. 752 F.2d at 624. He did move for a directed verdict, and moved for a mistrial three times, however. *Id.* at 625. At post-conviction proceedings, defense counsel testified that "his silence reflected a trial strategy in the face of overwhelming evidence against his client." *Id.* The trial court, relying on that testimony, found a sufficient basis on which to conclude that counsel's silence was a reasonable trial strategy. *Id.* It distinguished the case from *Martin v. Rose*, 744 F.2d 1245 (6th Cir.1984), *infra*, in that Warner had admitted his guilt, so his case was not subject to much question, the evidence against him was overwhelming, and counsel had testified that he was

prepared. *Id.* The court found, accordingly, no ineffectiveness of counsel.[3]

In *Sanchez,* the defendant also was tried *in absentia.* He had met his attorney once, 790 F.2d at 248, and then was released on bail, from which he did not return. *Id.* Therefore, Sanchez's counsel stood silent during the entire trial, except that he made two objections to the court, one regarding its decision to try his client *in absentia, id.,* and the second, when he joined Sanchez's co-defendant's motion for judgment of acquittal. *Id.* The Eleventh Circuit Court of Appeals found that Sanchez had not been denied effective assistance of counsel, stating that

> "where, as here, the defendant by his own obstructive conduct precludes his counsel from pursuing an intelligent active defense, the concerns of *Cronic* . . . are not involved. . . ."

*Id.* at 254.

The decisive and critical concern expressed by the court in *Sanchez,* that Sanchez could have forever blocked his being brought to justice and prevented his own trial from ever being held, by refusing to cooperate and evading arrest, *id.,* is not present in this case, at least to anywhere near the extent that it was in *Sanchez.* While that is a concern that can be, and often is, expressed in every case in which the issue of trial *in absentia* is a possibility, it was especially acute in Sanchez, being the prime rationale for the decision. No such magnitude of concern is warranted in this case. While Sanchez did

---

**3.** It legitimately and logically may be argued that defense counsel in *Warner v. Ford,* 752 F.2d 622 (11th Cir.1985), as a matter of fact, did subject the prosecution's case to meaningful adversarial testing in that he made substantive motions during trial, before the jury. The office of such motions, by their very nature, is to call the prosecution's case into direct question. In response to such a motion, we may assume, because judges are presumed to know the law and to follow it, *Bank of the U.S. v. Dandridge,* 12 Wheat. 64, 25 U.S. 64, 69–70, 6 L.Ed. 552, 554 (1827); *Schowgurow v. State,* 240 Md. 121, 126, 213 A.2d 475, 479 (1965); *Albrecht v. State,* 132 Md. 150, 156, 103 A. 443, 445 (1918), that the court critically and impartially evaluated the evidence and found it sufficient. Defense counsel in this case made no such motions.

not cooperate with his counsel, the petitioner had done so until the time of his flight. Sanchez had a history of obstructive conduct; Walker did and does not. The concerns underlying the *Sanchez* decision are simply not present in the case *sub judice.*

"The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing ... if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." *Cronic,* 466 U.S. at 656–7, 104 S.Ct. at 2045–46, 80 L.Ed.2d at 666. The purpose of *Cronic* is to maintain the integrity of the adversarial system, which depends on a balance of power between prosecution and defense. *Id.* at 655, 104 S.Ct. at 2044–45, 80 L.Ed.2d at 665. This, in fact, is the reason for the Sixth Amendment right to counsel. *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, 805 (1963). As we have seen, the Supreme Court has characterized the ineffective assistance proscribed by *Cronic* as "a complete failure" to test the State's case, *Florida v. Nixon,* 543 U.S. 175, 125 S.Ct. 551, 562, 160 L.Ed.2d 565 (2004); *Bell v. Cone,* 535 U.S. 685, 697, 122 S.Ct. 1843, 1851, 152 L.Ed.2d 914, 928 (2002)—if counsel is denied during a critical stage of the trial, or if no attorney could have provided defendant with effective assistance given the surrounding circumstances. Thus, the proper focus is on whether there was a failure actually to test the prosecution's case meaningfully. *Id.* at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668.

To be sure, the *Cronic* holding is narrow, as the Supreme Court made clear in *Bell v. Cone,* 535 U.S. at 697, 122 S.Ct. at 1851, 152 L.Ed.2d at 928, observing: "When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that an attorney's failure must be complete. We said 'if counsel *entirely* fails to subject the prosecution's case to meaningful testing.' *Cronic, supra,* at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668 (emphasis added)." In that case, defense counsel had cross-examined the prosecution's witnesses, had

not called any defense witnesses, and waived closing argument. *Id.* That the *Cronic* holding is narrow does not, however, indicate that the test it announced is meaningless.

Requiring a complete failure to test the State's case does not mean that, for a defendant to succeed, defense counsel must be shown to have done absolutely nothing to test the State's case. Just because counsel may have opened his mouth at some point during the trial to make a comment or offer some other non-substantive or innocuous expression does not mean he or she has meaningfully tested the prosecution's case. In several "sleeping lawyer" cases, attorneys who napped during at least one critical stage of the trial have been found to have failed to provide effective assistance even when, during their conscious moments, they expertly cross-examined state witnesses, objected, and introduced evidence. *See Tippins v. Walker,* 77 F.3d 682, 686 (2d Cir.1996) (when an attorney was "repeatedly unconscious at trial for periods of time during which the defendant's interests were at stake" a structural flaw occurred, resulting in prejudice, even though attorney put on defense and called witnesses during times of consciousness); *Javor v. United States,* 724 F.2d 831, 833–35 (9th Cir.1984) (unconscious or sleeping counsel is inherently prejudicial, as partial absence is prejudicial as a matter of law, despite attorney having presented vigorous, adequate arguments during times of consciousness); *Burdine v. Johnson,* 262 F.3d 336, 349 (5th Cir.2001) (prejudice presumed when attorney has slept or remained unconscious through critical stages of the trial regardless of counsel's adequacy when awake). Thus, an attorney can meaningfully fail to test the prosecution's case even though he may have said *something* during trial, and not remained completely silent.

Although not an *in absentia* case, *Martin v. Rose,* 744 F.2d 1245 (6th Cir.1984), is instructive. There, the defendant was tried, on several counts, for the sexual abuse of his stepchildren. *Id.* at 1247. Prior to trial, Martin's counsel [hereinafter "counsel"] filed several pretrial motions, including a motion to dismiss for denial of a speedy trial. *Id.* When these motions were not heard before trial started, counsel deter-

mined that he would "rely on [his] Motions," *id.*, which reliance would be reflected by his declining to participate at trial; he would not "put on any proof" or cross examine witnesses. *Id.* Although he refrained from participating in jury selection, he did make an opening statement to the jury. In that statement, Counsel explained that he would not participate in the trial and gave reasons for that decision. *Id.* Consistently thereafter, counsel did not cross-examine witnesses, did not call any witnesses, did not object, and did not make a closing argument. Martin was convicted.

On habeas corpus review, the Sixth Circuit Court of Appeals reversed. Having determined that counsel's conduct was a "deliberate trial tactic," *id.* at 1249, and fully cognizant of the requirement that it afford much deference to such decisions, that court concluded that counsel's decision to rely on that tactic was unreasonable, counsel's failure to participate being due to his misunderstanding of state law. *Id.* That and the fact, specifically noted by the court, that Martin had a good defense meant, said the court, that counsel had not rendered "professionally competent assistance." *Id.* It concluded that Martin demonstrated both prejudice under *Strickland,* and that there was no meaningful testing of the prosecution's case under *Cronic, i.e.,* that "the attorney's lack of participation deprived Martin of effective assistance of counsel at trial as thoroughly as if he had been absent." *Id.* at 1250.

Martin's counsel had done *something* at trial, he was not, as here, completely non-participatory—he had filed pretrial motions, argued that they should be heard, and then, once he had decided on his trial strategy, shared it with the jury, explaining that he intended to remain silent and why.[4] Nevertheless, on the basis of what he did not do, challenge the State's case in a meaningful way, the court found that his actions amounted to a complete lack of meaningful adversarial testing under *Cronic.*

---

4. The majority states that Martin was not advised of his counsel's trial strategy, but Martin was in the courtroom when his counsel clearly explained to the jury the purpose of his silence.

Comparing the performance of Martin's counsel to that of the petitioner's, it is apparent that, there is little to choose with respect to the level and nature of the legal assistance rendered. Perhaps counsel for Martin provided a degree of assistance better than that rendered by petitioner's counsel—unlike the petitioner's counsel, who addressed only the court with regard to his strategy, Martin's counsel addressed the jury, the very body charged with observing and determining the outcome of the adversarial proceedings. In no way, in any event, can the representation by petitioner's counsel be considered to be qualitatively different, and certainly it was not better, than that rendered by Martin's counsel and, so, is entitled to no greater deference.

The majority distinguishes *Walker* from *Martin* because Martin had a good, likely truthful defense and because the evidence against him was not overwhelming, as it was against Walker. *Walker v. State*, 391 Md. 233, 256–57, 892 A.2d 547, 560–61 (2005). Such an analysis places the cart before the horseit argues, in essence, that Walker was not deprived of effective assistance of counsel because he was guilty anyway. Furthermore, the *Martin* court's discussion of Martin's strong defense and likely innocence has nothing to do with its *Cronic* analysis. The court performed both a *Strickland, Martin v. Rose*, 744 F.2d at 1249–50, and a *Cronic, id.*, analysis, finding that Martin had not received effective assistance under either standard. *Martin*, 744 F.2d at 1251. That Martin had a strong defense in the face of limited evidence, therefore, went to whether, under *Strickland*, he had been prejudiced. *Id.* at 1249. In so concluding, the court described several actions which counsel could have undertaken, and which would have been consistent with his role as counsel; his failure to do any of them amounted to prejudice under *Strickland*. *Id.* at 1250. Specifically the court stated:

> "While arguing his motion to dismiss or continue, Martin's attorney told the court that Martin had stated that he denied the charges against him. The attorney knew that Martin was willing to testify and had no criminal record. The only direct evidence against Martin was the testimony

of his stepdaughters; if Martin had been called to testify the jury would have heard his denial and his theory that the girls were encouraged to falsify the incident, and would have been able to judge the credibility of the defendants and of his stepdaughters in reaching a verdict."

*Martin,* 744 F.2d at 1250.

In addressing *Cronic,* the *Martin* court focused on whether counsel's failure to participate in the trial made the adversarial process unreliable. It concluded that counsel's refusal to participate meant that Martin was unable to subject the prosecution's case to meaningful adversarial testing, and thus the *Cronic* test failed as well. *Id.* at 1250–51. It explained:

"Because his attorney refused to participate in any aspect of the trial, Martin was unable to subject the government's case against him to 'the crucible of meaningful adversarial testing' the essence of the right to effective assistance of counsel. The attorney's total lack of participation deprived Martin of effective assistance of counsel at trial as thoroughly as if he had been absent. This was constitutional error even without any showing of prejudice."

*Id.* at 1250–51 (citations omitted).

Whether, therefore, the state's case against Walker was strong or weak is immaterial to a *Cronic* analysis; regardless of what type of case the state has, it still must be subjected to meaningful adversarial testing. *Cronic* presumes ineffective assistance whenever it is clear that the adversarial system has so broken down that it is impossible for prejudice to be avoided, *Cronic,* 466 U.S. at 656, 104 S.Ct. at 2045, 80 L.Ed.2d at 665; that occurs when the tools essential to the adversarial system are not utilized, with the result that there is, in reality, no adversity of position.

That Martin perhaps had a stronger defense than Walker does not mean the test applicable to each case is different, that one is entitled to greater assistance—adversarial testing, if you will—than the other. After-the-fact evaluation of the strength of the State's case should not be a factor in the application of the test, with one result, a finding of effective

assistance, obtaining when the evidence of guilt is strong, and another, a finding of ineffective assistance, when it is weak or not so strong. *Cronic* does not require that the adversarial testing be successful, or likely so, just that it be meaningful. It follows, therefore, that however strong the evidence of the petitioner's apparent guilt, it certainly was possible for his attorney meaningfully to test the prosecution's case.

*Martin* is not alone. *See also United States v. Swanson,* 943 F.2d 1070, 1074 (9th Cir.1991) (attorney's concession of a lack of reasonable doubt to the jury was failure to subject the prosecution's case to meaningful *adversarial* testing and, thus, a failure to provide effective assistance under *Cronic* ). *See also Tippins v. Walker,* 77 F.3d 682, 686 (2d Cir.1996) (when an attorney was "repeatedly unconscious at trial for periods of time during which the defendant's interests were at stake" a structural flaw occurred, resulting in prejudice, even though attorney put on defense and called witnesses during times of consciousness); *Javor v. United States,* 724 F.2d 831, 833–35 (9th Cir.1984) (unconscious or sleeping counsel is inherently prejudicial, as partial absence is prejudicial as a matter of law, despite attorney having presented vigorous, adequate arguments during times of consciousness); *Burdine v. Johnson,* 262 F.3d 336, 349 (5th Cir.2001) (prejudice presumed when attorney has slept or remained unconscious through critical stages of the trial regardless of counsel's adequacy when awake).

The majority makes several other arguments in support of its conclusion that the petitioner's counsel rendered effective assistance: the State's case was meaningfully tested by the petitioner's co-defendant, *Walker v. State,* 391 Md. at 256, 892 A.2d at 560; the petitioner's counsel had a sufficient period of time to prepare for trial and was prepared, *id.* at 253, 892 A.2d at 559; the evidence against the petitioner was overwhelming and, so, there was little that the petitioner's counsel could have done. *id.* at 256, 892 A.2d at 560; a decision in the petitioner's favor invites abuse, in that defendants will be able to disrupt trials and avoid being brought to justice. *id.* at 258–

59, 892 A.2d at 562.  None of these arguments is persuasive, if even relevant.

First, that the attorney for the petitioner's co-defendant subjected the State's case to meaningful adversarial testing with respect to that attorney's client is an insufficient basis on which to argue that the case against the petitioner was meaningfully tested.  The sixth amendment right is a personal right, *Texas v. Cobb*, 532 U.S. 162, 172, 121 S.Ct. 1335, 1343, 149 L.Ed.2d 321, 331(2001);  thus, the petitioner had a right to *his own* effective counsel, in the State's case against *him*.  It is immaterial that a co-defendant's counsel was effective in the State's case against that co-defendant.  The majority does not cite any case in which the Supreme Court, or any court, for that matter, has held that the meaningful adversarial testing requirement can be satisfied, or is satisfied, as to all defendants, by the efficient and effective representation of a co-defendant by that co-defendant's counsel.  I certainly know of none and have been unable to find any.

Second, the amount of preparation time defense counsel has or the extent of defense counsel's actual preparation is not necessarily predictive of his or her actual performance in an *in absentia* situation.  Indeed, it may not be material to that situation at all.  However much preparation time the petitioner's counsel had to prepare this case for trial and however well prepared he actually was certainly did not inure to the petitioner's benefit in this case. The record reflects a complete failure of representation of the petitioner whatever counsel's level of preparedness and however long it took to achieve that level.

Third, and as discussed above, *Cronic* presumes prejudice in certain situations.  Thus, whether the petitioner was guilty, or how voluminous the proof of that guilt, is not the proper question.  The only relevant question is whether, by doing nothing, or as close to nothing as one could get, counsel discharged his responsibility to render effective assistance of counsel.  By doing nothing, counsel did not further his client's interest in having the gears of the adversary system engaged,

to the end of testing the strength of the State's case. The majority, noting the overwhelming evidence against the petitioner, suggests that it cannot conceive of a way in which defense counsel could have any more meaningfully tested the state's case. *Walker v. State,* 391 Md. at 256, 892 A.2d at 560. It takes little imagination to realize the obvious-he could and should have, at the least, tested the State's witnesses' ability to recall, observe and relate accurately that to which they offered testimony.

Finally, the majority's concern that defendants will abuse the system, and successfully so, were the Court to find a *Cronic* exception in cases where defendants have deliberately rendered themselves unavailable for trial is, to my mind, terribly overblown and unrealistic. As I piece it together, the fear is that defendants, on a broad scale, will abscond to avoid a trial already scheduled, knowing that, if their attorneys remain silent, they will get a new trial. I have not the slightest doubt that attorneys, officers of this Court, held to high ethical standards of conduct, will not so easily be used or so easily acquiesce in this way.

This case does create a concern with respect to attorney representation in *in absentia* cases. After this case, no meaningful review of attorney performance will be possible or necessary in this kind of case. This Court has provided a blueprint for attorneys faced with trial *in absentia,* one that will insulate them from findings of ineffective assistance of counsel: adopt a strategy to "do nothing;" that strategy even can be coupled with one that does not make sense or that is improper. Why, with this high level instruction, would, or should, an attorney do anything beyond remaining silent? After all, the Court has instructed that a non-participatory strategy is enough, and to do more would, or could, subject the attorney to post-conviction proceedings at which he could be determined to have provided ineffective assistance.