# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          :

                     :

                     :         ID No. 1410004532

          v.           :

                     :

MICHAEL E. LAMBERT,      :

                     :

        Defendant.      :

Submitted: March 17, 2022
Decided: June 30, 2022

## OPINION

Lindsay Taylor, Deputy Attorney General, Department of Justice, Georgetown, Delaware, *Attorney for the State.*

Benjamin S. Gifford IV, Esquire, Law Office of Benjamin S. Gifford, Wilmington, Delaware, *Attorney for the Defendant.*

**Clark, R.J.**

This decision addresses Defendant Michael Lambert's motion for postconviction relief. His motion requires the Court to examine the two issues that generally arise in ineffective assistance of counsel claims: trial counsel's performance, and whether trial counsel's allegedly deficient performance prejudiced the defendant. In this case, the Court must also resolve an issue of first impression when it considers the first of these two inquiries.

Prior to trial, Mr. Lambert's trial counsel ("Trial Counsel") diligently and competently litigated a suppression issue. The Court denied the motion and Trial Counsel sought to preserve his right to appeal that decision. Unlike in the federal system and in many states, Delaware does not permit a defendant to enter a conditional guilty plea to preserve appeal rights. At trial, Trial Counsel attempted to work around this gap in Delaware practice. Namely, he attended Mr. Lambert's bench trial but did nothing to defend him. He declined to make an opening statement, declined to cross-examine the State's witnesses, made no objections, presented no witnesses, and made no closing argument. While declining these measures, he incorrectly believed that he was participating in a "stipulated trial." To the contrary, Trial Counsel sought the functional equivalent of a conditional guilty plea to preserve Mr. Lambert's appeal rights.

Here, concerns of judicial economy did not justify his approach. For the reasons discussed below, Trial Counsel performed deficiently when he did not provide Mr. Lambert a defense, and the Court must presume that those deficiencies prejudiced Mr. Lambert. As a result, Trial Counsel's representation deprived Mr. Lambert of his Sixth Amendment Right to Counsel. Mr. Lambert's motion for postconviction relief must be **GRANTED**, and he is entitled to a new trial.

# I.     BACKGROUND

As in any postconviction motion, the procedural background drives as much of the Court's decision as the factual background.   Before discussing the procedural and factual background, however, the Court will first discuss the applicable law that controls the Court's decision.

## A.  Applicable Law

The Sixth Amendment to the United States Constitution, applied to Delaware through the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to have the Assistance of Counsel for his [defense]."[1]   The accused's right to counsel is one of the most fundamental components of the criminal justice system.[2]   It is the most pervasive because it affects the defendant's ability to assert all other available rights.[3]   Recognizing the Right to Counsel's importance, the United States Supreme Court has long held that the Right includes the right to the *effective* assistance of counsel.[4]   If counsel provides no actual assistance to the accused, then the constitutional guarantee has been violated.[5]   The Delaware Supreme Court has recognized that this guarantee is designed to both ensure fair trials, and, in a broader sense, to promote confidence in the fairness of the criminal justice system.[6]

---

[1] U.S. Const. amend. VI; *see Gideon v. Wainwright*, 372 U.S. 335, 343 (1963) (holding that the Sixth Amendment right to counsel in criminal proceedings applies to the states through the Fourteenth Amendment).
[2] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).
[3] *United States v. Cronic*, 466 U.S. 648, 653 (1984); *Urquhart v. State*, 203 A.3d 719, 728 (Del. 2019).
[4] *Strickland*, 466 U.S. at 686 (citing *McMann*, 397 U.S. at 771 n.14) (emphasis added); *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009).
[5] *Cronic*, 466 U.S. at 654.
[6] *Cooke*, 977 A.2d at 840 (citing *Strickland*, 466 U.S. at 686, 691-92).

The primary framework for evaluating ineffective assistance of counsel claims comes from the United States Supreme Court's decision in *Strickland v. Washington.*[7]  In the *Strickland* decision, the Court established a two-part inquiry to evaluate such claims.   A  defendant who asserts a claim of ineffective assistance of counsel must show that: (1) counsel's conduct fell below an objective standard of reasonableness (the "performance prong"), and (2) there was a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different (the "prejudice prong").[8]

Under the first *Strickland* prong, a review of an attorney's performance must be deferential.  It requires that courts limit hindsight and evaluate the conduct from counsel's perspective at the time.[9]   The *Strickland* Court provided no specific guidelines other than to instruct the lower courts to determine if counsel's performance was reasonable when compared to "prevailing professional norms."[10] When conducting the inquiry, a court must first presume that counsel performed his or her role reasonably.[11]   A defendant must also overcome the presumption that, under the circumstances, "the challenged action '*might* be considered sound trial strategy.'"[12]   Thus, a defendant who raises a claim of ineffective assistance must specifically identify exactly what action or omission by counsel fell outside the scope of reasonable professional judgment.[13]   The Court must then determine

---

[7] 466 U.S. 668 (1984).

[8] *Id.* at 688-94.

[9] *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[10] *Id.* at 688; *see* Meredith J. Duncan & George Butler, *Lafler and Frye: Strickland Revitalized?* 2012 WL 6620460, 25 Fed. Sent'g Rep. 144 (Dec. 2012) (examining *Strickland's* performance prong and noting that the *Strickland* Court refused to provide specific guidelines for what is "reasonably effective assistance").

[11] *Strickland*, 466 U.S. at 690.

[12] *Id.* at 689 (emphasis added) (quoting *Michel*, 350 U.S. at 101 (1955)).

[13] *Id.* at 690.

"whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."[14]

With respect to the prejudice prong, the *Strickland* Court explained that "an error by counsel, even if professionally unreasonable, does not warrant setting aside the criminal judgment if the error had no effect."[15] As a result, any deficiency in counsel's performance must prejudice the defense before it becomes ineffective assistance.[16] Prejudice, in *Strickland* terms, occurs when the attorney's errors create a reasonable probability that the outcome would have been different but for counsel's errors.[17]

The United States Supreme Court issued its decision in *United States v. Cronic*[18] on the same day it issued the *Strickland* decision. In *Cronic*, the Supreme Court articulated three limited exceptions that excuse a defendant from demonstrating actual prejudice. As the Court recognized in *Cronic*, these three scenarios include "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."[19] If one of these three exceptions applies, prejudice is presumed. Then, the defendant is relieved of his or her obligation to demonstrate a fair probability that the outcome would have been different but for the error.

The first *Cronic* exception arises when there is a complete denial of counsel at a critical stage of the criminal process.[20] A "critical stage" of the process includes one of many pretrial and post-trial stages through sentencing.[21] A non-exhaustive

---

[14] *Id.*

[15] *Id.* at 691.

[16] *Id.* at 692.

[17] *Martin v. Rose*, 744 F.2d 1245, 1250 (6th Cir. 1984) (citing *Strickland*, 466 U.S. at 692).

[18] 466 U.S. 648 (1984).

[19] *Id.* at 658.

[20] *Id.* at 659; *Urquhart*, 203 A.3d at 729.

[21] *Urquhart*, 203 A.3d at 729 n.57. *See Reed v. State*, 258 A.3d 807, 821-22 (Del. 2021) (explaining that the right to effective assistance of counsel is not limited only to the trial, but

5

list of such stages include arraignments, post-indictment identification lineups, preliminary hearings, the plea bargaining process, trials, and sentencings.[22] The second exception applies when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[23] The third exception provides for a presumption of prejudice when "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."[24]

### B. Allegations Against Mr. Lambert

The Delaware State Police ("DSP") arrested Mr. Lambert after its officers received a report from the Anne Arundel County Sheriff's Office (the "Sheriff"). The Sheriff reported that Mr. Lambert had robbed and shot an individual in Anne Arundel County, Maryland. Mr. Lambert then attempted to carjack a vehicle, was unsuccessful, but nevertheless fired his handgun at the vehicle's driver as she escaped. He then successfully carjacked another vehicle at gunpoint. The Sheriff described the stolen vehicle and reported that when Mr. Lambert fled Maryland, he travelled directly to his residence in Houston, Delaware.

After receiving this information, DSP surveilled the Houston residence. Outside the home, the police observed a vehicle matching the make, model, and color of the one reported stolen from the Anne Arundel area. The vehicle at the residence had a partially covered Maryland license plate. Several characters on the

---

"applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice") (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012)).

[22] *See* Brian R. Means, *Proceedings Where There is a Constitutional Right to Counsel*, Postconviction Remedies § 35:2 (providing a non-exhaustive list of stages found by caselaw to be "critical" for Sixth Amendment purposes and where the Right to Counsel attaches).

[23] *Urquhart*, 203 A.3d at 729 (quoting *Cronic*, 466 U.S. at 659).

[24] *Reed*, 258 A.3d at 825 (quoting *Cronic*, 466 U.S. at 659-60).

plate were visible. The visible characters matched corresponding characters found on the stolen vehicle's plate.

DSP then surrounded the residence to ensure that Mr. Lambert did not escape. At that point, DSP detectives applied for a search warrant through the videophone process with Justice of the Peace Court No. 2 in Rehoboth. As they applied for the warrant, an individual left the residence. DSP immediately apprehended that individual and he told the officers that Mr. Lambert remained inside. Mr. Lambert then exited the residence at the request of the police and DSP secured the premises while they awaited the warrant. Their search eventually recovered a firearm and ammunition that Mr. Lambert, a prior convicted felon, admitted in a videotaped confession that he possessed. The State then charged him with Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, and Receiving Stolen Property.

### C. Mr. Lambert's Motion to Suppress

Prior to trial, Trial Counsel filed a motion to suppress the physical evidence that DSP had seized. He also sought to exclude Mr. Lambert's confession as fruit of the poisonous tree. Trial Counsel based the motion on the premise that DSP had executed the search before the Justice of the Peace Court issued the warrant. In the motion, Trial Counsel cited helpful authority to support his motion and effectively structured the motion's factual allegations.

The Court then held a pretrial evidentiary hearing. At the hearing, the State presented four DSP witnesses: Sergeant Skinner, Detective Vernon, Detective O'Leary, and Detective Daddio. On direct examination, the witnesses' combined testimonies described the videophone warrant application process. They also described (1) DSP's efforts to secure the premises while they waited for the court to

approve the warrant, (2) the timing and manner of warrant execution, and (3) their search for and seizure of the challenged evidence.[25]

Trial Counsel's hearing strategy included challenging the State's position that DSP had secured the warrant before the search.[26] He effectively cross-examined the witnesses based upon discrepancies in the facsimile timestamps found on the documents.[27] After the hearing, Trial Counsel submitted supplemental written argument and contended that DSP failed to meet the statutory warrant application requirements of 11 *Del. C.* § 2306.[28] Notwithstanding his vigorous and effective advocacy, the Court denied the motion for the reasons explained in its June 2015 decision.[29]

### D. Mr. Lambert's Bench Trial and Sentencing

After the Court denied the suppression motion, Mr. Lambert rejected the State's plea offer and proceeded to trial. On the morning of trial, the State entered a *nolle prosequi* on the single charge of Receiving Stolen Property.[30] Trial Counsel then told the Court that Mr. Lambert wished to proceed with a partially stipulated bench trial. After a written waiver and the appropriate colloquy, Mr. Lambert waived his right to a jury trial. Trial Counsel next informed the Court that Mr.

---

[25] Mot. to Suppress Tr., at 4,13, 29, 38, and 54.

[26] *Id.* at 21-24.

[27] *Id.* at 20, 26, 34, 49, and 61.

[28] *See* Supplemental Argument at 1 (arguing that the application for the search warrant could not have been properly executed before the search was initiated because the affiant did not sign it before faxing it to the JP court in violation of 11 *Del. C.* § 2306). Trial Counsel also challenged certain exceptions to the warrant requirement argued by the State, including the inevitable discovery doctrine. The Court ultimately relied upon that exception when finding the search to be lawful. *Id.* at 5-6.

[29] *State v. Lambert*, 2015 WL 3897810, at *7 (Del. Super. June 22, 2015), *aff'd*, 149 A.3d 227, 2016 WL 5874837, at *2 (Del. Oct. 7, 2016) (TABLE).

[30] Bench Trial Tr. at 10-11. There is no indication in the trial record or in the postconviction record that the State's decision to dismiss the charge was based upon anything other than the State's assessment that there was insufficient evidence to proceed on that charge.

Lambert stipulated to two elements of the offenses charged by the State. He first stipulated that the handgun seized during the search was a firearm as defined by 11 *Del. C.* § 222(13).[31] Second, he stipulated that on the date of the alleged offense, he was prohibited from purchasing, owning, possessing, or controlling a firearm or ammunition because of his felony record.[32] Mr. Lambert did not stipulate, however, to possessing the firearm or the ammunition.

Based upon Mr. Lambert's stipulation to certain elements, the Court conducted the necessary additional colloquies.[33] Trial Counsel, however, did not explain to the Court that he intended to offer no defense at trial. Accordingly, the Court did not perform a guilty plea colloquy or alternatively consider what colloquy would be necessary to confirm whether Mr. Lambert understood Trial Counsel's intended strategy or if he consented to it.

As the trial began, Trial Counsel waived his opening statement. During the State's case in chief, the State introduced testimony from two witnesses that Trial Counsel did not cross-examine. The State also moved Mr. Lambert's videotaped confession and the firearm and ammunition into evidence without objections. Furthermore, Trial Counsel declined to cross-examine the State's witnesses. After the State rested, Trial Counsel introduced no evidence on Mr. Lambert's behalf. Then, after the State presented its closing argument, Trial Counsel waived the opportunity to address the Court in closing. After considering the evidence and the State's argument, the Court found Mr. Lambert guilty of the two charges.

At sentencing, the State moved to declare Mr. Lambert a habitual offender and the Court granted the request as unopposed.[34] Unlike at trial, during sentencing,

---

[31] *Id.* at 7.
[32] *Id.*
[33] *Id.* at 6-9.
[34] Sent'g Tr. at 2.

9

Trial Counsel advocated for Mr. Lambert. He urged the Court to find and apply mitigating factors and requested that the Court sentence Mr. Lambert to the minimum mandatory sentence which included fifteen years of incarceration.[35] After considering the State's position, Mr. Lambert's position, and the presentence investigation, the Court sentenced Mr. Lambert to sixteen years of incarceration, followed by decreasing levels of probation.

Mr. Lambert then appealed his conviction, sentence, and the denial of the motion to suppress to the Delaware Supreme Court. The Supreme Court affirmed the conviction and held that the Superior Court had properly denied Mr. Lambert's motion.[36]

### E. The Parties' Postconviction Arguments

After the Supreme Court denied Mr. Lambert's direct appeal, he filed a *pro se* Rule 61 Motion. He alleged ineffective assistance of counsel, asserted several grounds for relief, and requested that the Court appoint him postconviction counsel.[37] The Court appointed counsel and then transferred the motion to the Commissioner for her consideration pursuant to 10 *Del. C.* § 512(b) and Superior Court Criminal Rule 62.[38]

From the outset, Mr. Lambert's arguments focused on the United States Supreme Court's decision in *Cronic*. First, he contended that because Trial Counsel

---

[35] *Id.* at 3-4.

[36] *Lambert*, 2016 WL 5874837, at *2.

[37] A motion for postconviction relief must be filed within one year after the judgment of conviction is final. Super. Ct. Crim. R. 61(i)(1). Mr. Lambert filed his initial Rule 61 motion on February 9, 2017, within one year of his convictions being confirmed by the Delaware Supreme Court. Accordingly, Mr. Lambert's motion was timely.

[38] Order of Reference to Comm'r. *See* 10 *Del. C.* § 512(b)(1) (providing "[a] judge may designate a Commissioner to conduct hearings . . . and submit to a judge of the Court proposed findings of fact and recommendations for the disposition . . . of applications for postconviction relief . . . ."); Super. Ct. Crim. R. 62(a)(5) (providing Commissioners with the power to conduct case-dispositive hearings, including hearings involving postconviction relief pursuant to Super. Ct. Crim. R. 61).

10

offered him no defense at his trial, Trial Counsel performed deficiently. He then turned his focus to the prejudice prong and argued that showing prejudice should be excused pursuant to *Cronic*. In arguing that, he relied on the second *Cronic* exception: where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.[39]

After the Commissioner received the referral, she ordered Trial Counsel to submit an affidavit to respond to Mr. Lambert's allegations. Trial Counsel's affidavit provided only a vague explanation of his trial strategy, however.[40] Namely, he merely recited that because of "the nature of the evidence and an intended course of action" he decided to stay silent at trial.[41] In the affidavit, he also recited that he discussed the decision *to conduct a bench trial* with Mr. Lambert so he could preserve Mr. Lambert's right to appeal the Court's suppression decision.[42] The affidavit provided no other justification for Trial Counsel's decision to remain silent throughout the trial. Nor did it address the extent to which Mr. Lambert consented to a trial where his counsel provided no defense.

In response, the State contended that Trial Counsel's effective presentation of the suppression issue tested the State's *case* adequately, which made *Cronic* inapplicable.[43] Furthermore, the State contended that, even if Trial Counsel had committed errors at trial, the errors could not have caused prejudice to Mr. Lambert because the State presented overwhelming evidence of his guilt.

After considering the parties' arguments and the record, the Commissioner issued her Report and recommended that the Court deny Mr. Lambert's Rule 61 Motion. In her Report, the Commissioner applied the procedural bar of Superior

---

[39] *Id.* at 659.
[40] Aff. of Trial Counsel ⸿ 2.
[41] *Id.*
[42] *Id.* ⸿ 4 (emphasis added).
[43] State's Resp. to Mot. for Postconviction Relief at 5 (emphasis added).

Court Criminal Rule 61(i)(3).[44] Alternatively, on substantive grounds, she found (1) that Trial Counsel had competently represented Mr. Lambert, and (2) that Mr. Lambert could demonstrate no concrete prejudice.[45] She relied heavily on Mr. Lambert's videotaped confession when recommending that the Court deny the motion. When doing so, she applied what she described as common sense and reasoned that granting a new trial would waste time and resources because of the overwhelming evidence that supported Mr. Lambert's convictions.[46]

Mr. Lambert then appealed the Report. He initially attacked it on four grounds. First, he correctly contended, and the State has conceded, that the Commissioner incorrectly applied the procedural bar of Rule 61(i)(3) to his claim. The other three grounds challenged the Report's substantive findings and are appropriately considered as two that address the *Strickland* prongs. First, he contended that the Commissioner erred because Trial Counsel performed unreasonably when he remained silent throughout the trial. Second, he contended that the Commissioner erred when she declined to apply the second *Cronic* exception to excuse him from demonstrating prejudice.

After the State received Mr. Lambert's appeal, it declined to file a response; instead, it explained that it remained content to rely upon the arguments it had presented to the Commissioner. After the Court recognized that Mr. Lambert's

---

[44] Comm'r. Rep. at 13. *See* Super. Ct. Crim. R. 61(i)(3) (providing that any ground for relief not asserted in the proceedings leading to the judgement of conviction is barred unless the movant shows cause for relief and prejudice from violation of the movants rights). The State concedes that *no* procedural bar exists in this case. Mr. Lambert's motion alleged ineffective assistance of counsel for the first time during this postconviction motion. The Delaware Supreme Court has recently held that such claims may not be brought during trial or on direct appeal and are therefore not subject to the procedural bar contained in Super. Ct. Crim. R. 61(i)(3). *State v. Harris*, 2021 WL 4281303, at *2 (Del. Super. Sept. 21, 2021) (citing *Green v. State*, 238 A.3d 160, 175 (Del. 2020)).

[45] Comm'r. Rep. at 12.

[46] *Id.*

objections had potential merit, however, the Court requested that the State file a response as described more fully below.[47]

### F. The Court's Decision to Hold a Rule 61 Evidentiary Hearing

The Court agreed with Mr. Lambert that the Report, in large part, did not address certain substantive issues. As to *Cronic*, his objection focused only on the second exception: again, where "counsel entirely fails to subject the prosecution's *case* to meaningful adversarial testing."[48] He contended that this second exception excused him from demonstrating a reasonable probability that the result of his trial would have been different but for Trial Counsel's errors.

After reviewing the Report and Mr. Lambert's objections, the Court recognized that the Report did not fully explain why the Commissioner did not apply the *Cronic* framework. The Report also failed to consider another important issue. Namely, after the parties had concluded their briefing for the Commissioner, the Delaware Supreme Court issued its decision in *Urquhart v. State*.[49] There, our Supreme Court broadly interpreted *Cronic's* first exception: a "complete denial of counsel at a critical *stage* of the proceeding."[50] When it addressed the first exception, it expanded it to include the *constructive* complete denial of counsel.[51] Because the *Urquhart* decision was issued after the parties finished their briefing, neither they nor the Commissioner addressed the decision's importance.[52]

---

[47] Court's Letter Order at 2.
[48] *Cronic*, 466 U.S. at 659 (emphasis added).
[49] 203 A.3d 719 (Del. 2019).
[50] *Id.* at 730 (emphasis added).
[51] *Id.* at 732.
[52] On January 24, 2019, the Delaware Supreme Court issued its decision in *Urquhart v. State*. Mr. Lambert had already filed his Reply in the Commissioner's referred proceedings on January 9, 2019. All initial briefing before the Commissioner had concluded before the Supreme Court issued its decision. Understandably, neither counsel nor the Commissioner addressed the issues raised in the *Urquhart* decision during that part of the postconviction proceedings.

Because of the potential importance of the *Urquhart* decision to Mr. Lambert's case, the Court asked the parties to address it. The Court also asked for their positions regarding when silence at trial can constitute an effective strategy. Specifically, by letter, the Court requested that the parties address the following:

> (1) the applicability, if any, of the framework set forth *in Urquhart v. State*, (2) an analysis of a line of *Cronic* related cases regarding the issue of whether "silence can constitute trial strategy . . ."[53] and (3) in light of the lack of detail in trial counsel's affidavit, whether an evidentiary hearing is appropriate to evaluate trial counsel's strategy and the extent to which [that strategy] was disclosed to and agreed upon by Mr. Lambert.[54]

In the State's written argument, it contended that the framework provided in *Urquhart* was informative but factually distinguishable, which in turn made *Cronic* inapplicable. Second, and independently, the State circled back to the first *Strickland* prong and contended that because of the weight of the evidence, Trial Counsel's silence was a reasonable strategy because he successfully preserved Mr. Lambert's right to appeal. The State contended that Trial Counsel could not have changed the outcome regardless of his efforts. Despite the State's argument against postconviction relief, it nevertheless believed that an evidentiary hearing would be appropriate because Trial Counsel's affidavit was so vague.

Mr. Lambert also requested an evidentiary hearing. He contended that the *Urquhart* decision required the Court to apply *Cronic* to his case. He did not address the first exception, though; rather, he seemed to maintain his position and read the *Urquhart* decision as if it turned on the second exception. Finally, when Mr.

---

[53] *See e.g.*, *Walker v. State*, 892 A.2d 547, 560 (Md. 2006) (holding that trial counsel's strategy to not meaningfully participate in a trial *in absentia* held after defendant absconded and failed to appear for trial did not constitute a complete failure to subject the prosecution's *case*, and therefore *Cronic's* presumption of prejudice, as an element of the defendant's ineffective assistance of counsel claim, did not apply).

[54] Court's Letter Order at 2.

Lambert circled back to address the performance prong of the inquiry, he contended that Trial Counsel's "strategy" was unreasonable because Mr. Lambert received nothing in exchange for a complete surrender at trial.

The Court then held an evidentiary hearing to examine (1) counsel's strategy at trial, (2) the extent to which Trial Counsel disclosed that strategy to Mr. Lambert, and (3) whether Mr. Lambert consented to it.[55] At the hearing, Trial Counsel testified that he had engaged in what he considered to be a "stipulated trial" to preserve Mr. Lambert's right to appeal the suppression decision.[56] Trial Counsel could not recall a conversation with Mr. Lambert about his decision to present no defense at trial, or whether Mr. Lambert agreed to it.[57] Trial Counsel did not know the proper procedure for a stipulated trial or the best route to preserve pretrial issues for appeal.[58] He testified that he had not conducted such a "stipulated trial" before Mr. Lambert's case, and has not since.[59]

Trial Counsel further acknowledged that a jury trial would have equally maintained his right to appeal the suppression decision.[60] Likewise, he acknowledged that not presenting a defense, once the trial was underway, did nothing to advance Mr. Lambert's right to appeal.[61] Finally, Trial Counsel could not identify any expected benefit for Mr. Lambert for this strategy, on the front end.[62] In hindsight, he pointedly acknowledged that Mr. Lambert received no benefit for it, on the tail end.[63]

---

[55] Post-Trial Evidentiary Hearing Tr. at 7.
[56] *Id.* at 9:6-7.
[57] *Id.* at 7:8-9.
[58] *Id.* at 8.
[59] *Id.* at 7:17.
[60] *Id.* at 29:1.
[61] *Id.* at 31:13.
[62] *Id.*
[63] *Id.*

At the conclusion of the hearing, the Court recognized that both parties had misunderstood the Court's inquiries regarding *Urquhart*. As a result, neither party was prepared to address whether the first *Cronic* exception applied to Mr. Lambert's case. Rather, they requested additional time to address the *Urquhart* decision in post-hearing briefing.

## G. The Parties' Post-Hearing Positions

After the hearing, Mr. Lambert filed his post-hearing brief. In it, he maintains his primary focus on the second *Cronic* exception. Nevertheless, he now includes argument that the first exception also applies under *Urquhart*. Under either exception, he contends that he need not demonstrate prejudice.

After Mr. Lambert filed his post-hearing brief, the State filed a letter response and changed its position. The State now concedes that Trial Counsel ineffectively represented Mr. Lambert and that prejudice must be presumed because of the *Urquhart* decision. The State now also concedes that a new trial is necessary.

## II. SCOPE OF REVIEW

Pursuant to Superior Court Criminal Rule 62(a)(5), a Superior Court commissioner is permitted to conduct hearings, submit proposed findings of fact, and make recommendations for the disposition of a postconviction motion.[64] In what the Rule describes as an appeal of the Report, a reviewing judge "may accept, reject, or modify, in whole or in part, the findings of fact or recommendations made by the commissioner."[65] The Rule further provides that a party may object to the commissioner's recommendations.[66] Upon an appeal, the reviewing judge conducts a *de novo* review of the record when he or she evaluates the contested portions of

---

[64] Super. Ct. Crim. R. 62(a)(5).
[65] *Id.* (5)(ii).
[66] *Id.*

the commissioner's report.[67]  In this case, Mr. Lambert objects to both the Report's procedural and substantive recommendation.

### III.   ANALYSIS

At the outset, the Report incorrectly recommends that the Court apply a procedural bar to Mr. Lambert's motion.[68]  Here, as the State correctly concedes, no procedural bar applies. Accordingly, the Court must fully consider Mr. Lambert's substantive claims.

As to his substantive claims, the Court initially addresses the first *Strickland* prong to determine whether Trial Counsel  performed deficiently.   If Mr. Lambert meets his burden regarding the first prong,  he must then demonstrate one of two alternatives to prevail.   He will need to show *either* that (1) Trial Counsel's deficient performance prejudiced him, *or* (2) that one of the three *Cronic* exceptions excuses him from demonstrating prejudice.[69]

**A.    Trial Counsel's (1) attempt to execute the functional equivalent of a conditional guilty plea to protect Mr. Lambert's appeal rights, and (2) his misunderstanding regarding the appropriate procedure for a stipulated trial constituted deficient performance.**

The Court starts its analysis with the performance prong.   When courts consider the two *Strickland* prongs, they frequently start with the second one first: the prejudice prong.   That often simplifies the analysis because a defendant must meet both prongs to prevail.[70]   In this case, as the Court will explain, Mr. Lambert

---

[67] *Id.* (5)(iv).

[68] *See Harris*, 2021 WL 4281303, at *2 (explaining that a defendant may not raise ineffective assistance of counsel claims on direct appeal and declining to apply the procedural bar in such circumstances) (citing *Green v. State*, 238 A.3d 160, 175 (Del. 2020)).

[69] *Strickland,* 466 U.S. at 697; *Cronic*, 466 U.S. at 659-60.

[70] *Strickland*, 466 U.S. at 697.

meets his burden as to both prongs. As a result, the Court will address them sequentially.

As to the performance prong, trial tactics may fall below the line that delineates effective assistance of counsel if those tactics were outside the wide range of professionally competent assistance.[71] To determine what is professionally competent assistance, the Court recognizes the primary goal of effective representation – to ensure the integrity of the adversarial process.[72]

With that goal in mind, Trial Counsel's decision to remain silent throughout Mr. Lambert's trial did not constitute reasonable professional judgment.[73] Here, an element of the offense – possession – remained a factual issue for trial. Although the State presented significant evidence that supported his convictions, including Mr. Lambert's videotaped confession, Trial Counsel retained the obligation to advocate for his client in a reasonably professional manner. That obligation included, at a minimum, testing the State's case at trial. Trial Counsel fell short because he did not either step forward with some defense at trial or inform the Court that his client wished to plead guilty.

The Court fully appreciates that Trial Counsel's primary goal was to preserve his client's appeal rights. His silence as a strategy approach, however, attempted the functional equivalent of a guilty plea, albeit a conditional one that preserved those rights. When Trial Counsel failed to notify the Court what he planned to do, he prevented the Court from confirming that Mr. Lambert understood the rights that he was surrendering. Trial Counsel's choice also provided the Court no opportunity

---

[71] *Id.* at 690; *Martin*, 744 F.2d at 1249.
[72] *Martin*, 744 F.2d at 1250.
[73] *Strickland*, 466 U.S. at 690.

to determine if Mr. Lambert consented to relinquishing his Sixth Amendment Right to Counsel at trial.[74]

By way of further explanation, Delaware Superior Court Criminal Rules do not permit conditional guilty pleas. In contrast, Federal Rule of Criminal Procedure 11(a)(2) provides, in relevant part, that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea . . . reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion."[75] Delaware's version of Rule 11, on the other hand, does more than simply fail to provide for such a process. It tellingly provides that the conditional plea subsection, that would have established such a process, is "omitted."[76]

Were the Court to include a conditional guilty plea process in the courts' criminal rules, it could benefit judicial economy in some cases. Of course, deciding whether Superior Court criminal practice should contain such a procedure is outside the scope of this decision. Reviewing the decision to exclude such a process would require the consideration of long lists of pros and cons.[77] There is an obvious internal inconsistency, however, where the State is permitted to conditionally dismiss a case to appeal an adverse pretrial suppression decision pursuant to 10 *Del. C.* § 9902, but a defendant is permitted no similar mechanism.[78]

---

[74] During the postconviction evidentiary hearing, Trial Counsel could not recall to what extent, if any, he discussed with Mr. Lambert about proceeding in this manner. Post-Trial Evidentiary Hearing Tr. at 7:6-9.

[75] Fed. R. Crim. P. 11(a)(2).

[76] Super. Ct. Crim. R. 11(a)(2).

[77] *See* Wayne R. LaFave, et al., *Conditional Pleas*, 5 Crim. Proc. § 21.6(b) (4th ed. 2021) (recognizing the benefits of such a rule which prevent the waste of time, money, and other resources, and the major arguments against it which include increasing appellate litigation, that it militates against finality, harms the integrity of appellate review because of constricted records, and forces courts to decide constitutional questions that could otherwise be avoided).

[78] *See* 10 *Del. C.* § 9902(b)-(c) (providing that "[w]hen any order is entered before trial in any court suppressing or excluding substantial and material evidence, the court, upon certification by the [State] that the evidence is essential to the prosecution of the case, shall dismiss the complaint, indictment, or information, or any count thereof to the proof of which the evidence suppressed or

19

Notwithstanding the question of whether such a practice should be available, one is not. Here, Trial Counsel's motivations were well-meaning, and he intended to save the resources of the Court and the parties. Pointedly, Mr. Lambert did not have a strong trial defense available after the Court had denied his suppression motion. Nevertheless, Delaware criminal practice provides no mechanism that permits what Trial Counsel sought – the constructive equivalent of a conditional guilty plea. Once Mr. Lambert's trial began, Trial Counsel had the obligation to meet the Sixth Amendment's floor for reasonable performance. At trial, his performance fell below that benchmark.

In addition to attempting an inappropriate workaround of a nonexistent practice, Trial Counsel also misunderstood the nature of a stipulated trial. That misunderstanding also rose to the level of a deficiency in *Strickland* terms. Notably, even properly constructed stipulated trials can create procedural and substantive problems. There is no one-size-fits-all definition of a stipulated trial. They are frowned upon in some jurisdictions because confusion often arises over the subjects of the stipulations. Such uncertainty, even in the best of circumstances, makes it difficult for a defense attorney and the court to properly advise a defendant about the rights that he or she surrenders.[79]

Despite such potential pitfalls, there are acceptable "stipulated trial" processes that provide adequate safeguards. For instance, defendants who are terminated from the Court's drug diversion program face such a proceeding. In diversion cases, the

excluded is essential . . . . The State shall have an absolute right of appeal to an appellate court from an order entered pursuant to subsection (b) . . . and if the appellate court . . . shall reverse the dismissal, the defendant may be subjected to trial.")

[79] *See Commonwealth v. Gomez*, 104 N.E.3d 636, 643-44 (Mass. 2018) (discussing that stipulated evidence trials are incapable of supporting a conviction unless a comprehensive colloquy itemizing the rights the defendant is surrendering and confirming that the defendant understands the significance of the rights he or she gives up and also noting that stipulated trials are rife with procedural pitfalls).

Department of Justice refers a defendant to the program. In exchange, the defendant consents to a later "stipulated trial" if he or she does not successfully complete the program.[80] If the defendant does not graduate, he or she proceeds to trial based only upon the facts alleged in the police report.[81] Before a defendant enters the program, he or she must waive the right to a jury trial, waive certain appeal rights, and consent to this process after a Court-conducted colloquy. Finally, an attorney who recommends such a process obtains a considerable benefit for the defendant – the State's agreement to dismiss the pending charges if the defendant graduates.[82]

Contrasting Trial Counsel's misunderstanding of the structure of a stipulated trial with the stipulated trial in the diversion program helps to illustrate why Trial Counsel's decision was unreasonable. Namely, Trial Counsel obtained no benefit for Mr. Lambert by remaining silent throughout the trial. Furthermore, the record contains no evidence that Mr. Lambert understood the process or consented to it. Finally, Trial Counsel's choice to remain silent and failure to inform the Court of his intention to present no defense prevented the Court from performing an appropriate colloquy. All lie in contrast to the elements present in an acceptable stipulated trial.

Although Trial Counsel's silence throughout the trial was unreasonable, a portion of the stipulated trial in this case was appropriate. Namely, as in Mr. Lambert's case, parties in a criminal case may stipulate to certain facts, or even to an element or elements of an offense.[83] A defendant who agrees to such a process

---

[80] *Brown v. State*, 2017 WL 89059, at *5 (Del. Super. Jan. 9, 2017), *aff'd*, 170 A.3d 148, 2017 WL 3573788 (Del. Aug. 17, 2017) (TABLE). *See e.g.*, Delaware Superior Court, *A Participants Guild/ Handbook to the Drug Court Diversion Program*, at 18 (2015), https://courts.delaware.gov/Superior/pdf/drug court participants handbook english 2015.pdf (explaining that the participant engages in a "stipulated trial" upon termination because the participant waived his or her trial rights by voluntarily entering the program).

[81] *Robinson v. State*, 744 A.2d 988, 1999 WL 1319147, at *1 n.2 (Del. Dec. 17, 1999) (TABLE).

[82] *Tusio v. State*, 1997 WL 366850, at *1 (Del. Super. Mar. 20, 1997).

[83] *United States v. Muse*, 83 F.3d 672, 678 (4th Cir. 1996). *See* Wayne R. LaFave, et al., *Trial on Stipulated Facts*, 5 Crim. Proc. § 21.6(c) (4th ed. 2021) (explaining the use of trials on stipulated

waives only the requirement that the State produce evidence to establish the stipulated fact or element beyond a reasonable doubt.[84] Such stipulations present no difficulties in postconviction analysis because the defendant received at least some benefit from the decision and counsel and the court confirm his or her decision to participate in the process.

Trial Counsel sought no benefit for Mr. Lambert when he chose this course of conduct, which further contributed to its unreasonableness. A permissible stipulation requires some mutuality of benefit. Namely, the State may receive a benefit because (1) the stipulation relieves the State of the burden to produce evidence as to the fact or element, and (2) the defendant can no longer argue that the evidence as to that fact or element is insufficient.[85] On the other hand, a defendant may also receive a benefit that could include, *inter alia*, the dismissal of other charges as consideration, an agreement by the State for a favorable sentencing recommendation in the event of a conviction, or the ability to minimize the detrimental impact of prejudicial evidence on the trier of fact.[86] Mutual benefit may also flow as a result of professional cooperation between counsel where they seek to avoid wasting time and resources and where, in defense counsel's professional judgment, the defendant suffers no harm.

---

facts and collecting cases using that method); John Burns, *Stipulated Trials on the Minutes*, 4A Ia. Prac. Crim. Proc. § 16:3 (2022 ed.) (explaining that in a stipulated trial, the defendant waives a jury trial and stipulates to a portion of the allegations).

[84] *Muse*, 83 F.3d at 679.

[85] *Id. United States v. Reedy*, 990 F.2d 167, 169 (4th Cir. 1993).

[86] *See Adams v. Peterson*, 968 F.2d 835, 842 (9th Cir. 1992) (recognizing the variety of strategic reasons for proceeding by a trial on stipulated facts, ranging from preservation of issues to attempting to mitigate sentencing by acceptance of responsibility, or by controlling the evidence presented). *See also State v. Miller*, 2017 WL 1969780, at *2 (Del. Super. May 11, 2017) (recognizing that "[*i*]*n exchange for* [the defendant's] willingness to proceed with a stipulated bench trial, the State entered a *nolle prosequi* as to [the remaining charges].") (emphasis added).

On balance, an appropriate partially stipulated trial differs significantly from Trial Counsel's *unilateral* decision to not defend Mr. Lambert at his trial. Here, there was no "stipulation" in Mr. Lambert's case that obligated Trial Counsel to remain silent, and Mr. Lambert received no benefit for it. Trial Counsel's failure to provide a defense to Mr. Lambert at trial was not the result of reasonable professional judgment.

**B. Mr. Lambert need not demonstrate prejudice to prevail because the first *Cronic* exception applies.**

Mr. Lambert focused primarily on the second *Cronic* exception throughout the postconviction proceedings; he contended that his attorney did not put the prosecution's *case* to a meaningful adversarial test. Here, the first *Cronic* exception controls the prejudice inquiry, however. It controls because of the Delaware Supreme Court's recent decision in *Urquhart v. State*.[87]

Nevertheless, because the parties primarily addressed the second *Cronic* exception throughout their briefing, the Court will discuss it first. That *Cronic* exception requires the Court to address trial counsel's errors when assessed against the State's *case*, as a whole.[88] When the Court considers Mr. Lambert's case in its entirety, it recognizes that Trial Counsel advocated well for Mr. Lambert during different phases of the case. For instance, Trial Counsel made a strong showing for Mr. Lambert when presenting his suppression motion. Those efforts advanced Mr. Lambert's case, and in turn, significantly tested the State's *case*. Trial Counsel also advocated well for Mr. Lambert at sentencing. His representation at that stage provided further benefit to Mr. Lambert and a further test of the State's *case*.

---

[87] 203 A.3d 719 (Del. 2019).
[88] *Bell v.* Cone, 535 U.S. 685, 697 (2002) (emphasis added).

Although Trial Counsel unreasonably declined to participate at Mr. Lambert's trial, he also preserved Mr. Lambert's right to appeal the suppression decision.

Because Trial Counsel advocated for his client at certain points in the case and put the State's case to a meaningful adversarial test at those points, there is a reasonable argument that he put the State's *case* to a meaningful test. On the other hand, Mr. Lambert cites some persuasive authority to support applying the second *Cronic* exception.[89]

Mandatory authority does not support Mr. Lambert's position regarding the second exception. Namely, the United States Supreme Court has not elaborated upon the second exception since its decision in *Bell v. Cone*.[90] When it did, it significantly narrowed it in application. In *Cone*, the defendant alleged ineffective assistance because his trial attorney presented no mitigating evidence and made no closing argument during the penalty phase of a capital case.[91] Counsel did, however, cross-examine state witnesses and gave an opening statement during that phase.[92] The defendant, therefore, challenged his attorney's performance only at "specific points" during the proceeding.[93] As a result, the Court held that *Cronic's* second exception did not apply. Rather, the Court limited its application to only where the attorney's failure is *complete* with respect to the *entire proceeding,* as opposed to

---

[89] *See Martin*, 744 F.2d at 1250 (finding a presumption of prejudice, in a decision issued eighteen years before the United States Supreme Court's decision in *Cone*, where the petitioner's attorney refused to participate in any aspect of the trial after several pretrial motions had been denied, and as a result, the petitioner was unable to subject the government's case to "meaningful adversarial testing," denying the petitioner effective assistance of counsel); *Cannon v. State*, 252 S.W.3d 342, 350 (Tex. Crim. App. 2008) (applying the first and second *Cronic* scenarios, without specifically applying one or the other and holding that defense counsel's decision to not participate at trial after the denial of a motion to recuse amounted to an entire failure to subject the prosecution's case to meaningful adversarial testing).

[90] 535 U.S. 685 (2002).

[91] *Id.* at 687; Stuart E. Walker, *"What we meant was . . ." The Supreme Court Clarifies Two Ineffective Assistance Cases in Bell v. Cone*, 53 Mercer L. Rev. 1271, 1273 (2003).

[92] *Cone*, 535 U.S. at 692.

[93] *Id.* at 687; Walker, *supra* note 91, at 1274.

specific points in the proceeding.[94]   Commentators have generally accepted that the *Cone* decision limits the breadth of *Cronic's* second exception.  In fact, many case decisions and legal commentators interpret *Cone* to have significantly limited all three *Cronic* exceptions.[95]

The Court need not resolve the State and Mr. Lambert's argument regarding the second exception, however.   It need not because the circumstances of this case now fit firmly within the scenario described in the first *Cronic* exception, as required by *Urquhart*.[96]

In *Urquhart*, the defendant sought a new trial and alleged that the first *Cronic* exception applied to his case.[97]   There, the Court began its analysis by describing the pretrial phase of the defendant's proceedings as the relevant "stage."[98]   During that stage, trial counsel had only minimal contact with the defendant from the

---

[94] *Cone*, 535 U.S. at 697 (emphasis added); Walker, *supra* note 91, at 1283; *see also* Black's Law Dictionary (defining "proceeding" as "including all possible steps in an action from its commencement to the execution of judgment").  Notwithstanding the Court's reference in *Cronic* to the "case" as the benchmark, and in *Cone* to the proceeding, the *Cone* decision nevertheless seems to parcel its frame of reference on only one portion of the proceedings – the penalty phase in a capital case. *Cone*, 535 U.S. at 697.

[95] *Walker*, 892 A.2d at 557. *See* Walker, *supra* note 91, at 1287 (limiting "*Cronic's* prejudice presumption to only those situations in which an attorney's failure is complete with the respect to the entire proceeding . . . ."); *see also* Jennifer Williams, *The Sixth Amendment Right to Counsel – The Supreme Court Minimizes the Right to Effective Counsel*, 28 U. Ark. Little Rock L. Rev. 149, 170-73 (2005) (explaining that the exceptions of *Cronic* were thought to provide some relief for defendants but recognizing that *Bell v. Cone* and *Florida v. Nixon* narrowed the exceptions to make them almost impossible to reach); Kimberly H. Zelnick, Note, *In Gideon's Shadow: The Loss of Defendant Autonomy and the Growing Scope of Attorney Discretion*, 30 Am. J. Crim. L. 363, 379-80 (2005) (discussing the *Cronic* presumption's limited application and opining that "[a]ny lingering hopes that *Cronic* may still be revived, moreover, were effectively foreclosed by the Court's more recent holding in *Bell v. Cone*."); Robert J. Nolan, *Prejudice Presumed: The Decision to Concede Guilt to Lesser Offenses during Opening Statements*, 55 Hastings L.J. 965, 974-80 n.69 (2004) (noting that *Bell* limits *Cronic* and most federal courts have read the *Cronic* presumptions more narrowly following *Bell*).

[96] *Urquhart*, 203 A.3d at 732.

[97] *Id.* at 726.

[98] *Id.* at 731.

arraignment until the beginning of trial.[99]   The Court then evaluated whether trial counsel's inadequate representation rose to the level of a complete denial of representation.[100] Despite trial counsel's physical presence at two points during the pretrial stage, he provided very little assistance to the defendant throughout that entire stage.[101]

In its analysis, the *Urquhart* Court acknowledged a difference in how lower courts interpret the first *Cronic* exception.[102]   When doing so, it took what it described as the unconservative approach.[103]   Namely, it expanded the exception in Delaware to include more than the mere physical absence of counsel.   The expansion now includes the *constructive* complete denial of counsel within Cronic's first exception.[104] Accordingly, under the *Urquhart* decision, a physically present attorney, who fails to advocate for his or her client during a critical stage of the proceedings, causes a constructive complete denial of counsel.[105]   That, in turn, excuses the defendant from demonstrating prejudice.[106]

When the Court applies *Urquhart's* holding to Mr. Lambert's case, it first recognizes that a bench trial is a "critical stage of the proceedings."   Because Trial Counsel physically attended the entire trial, the inquiry shifts to whether Trial

---

[99] *Id*.
[100] *Id.* at 732.
[101] *Id*.
[102] *Id*.  *See also* Brian R. Means, *Second Category of Cases: Per se violations*, Postconviction Remedies § 35:25, n.2 (2021) (listing cases where absence means physical absence); *c.f.* n.2 (listing cases that find absence under what can best be described as "complete constructive denial" as described in the *Urquhart* decision).
[103] *Urquhart*, 203 A.3d at 732; *but see id.* at 735 (Vaugh, J., dissenting) (taking the "conservative tack" mentioned by the majority, as used by the trial court below, and submitting that where counsel entered his or her appearance and physically appeared at pretrial events, there was not a "complete denial" of counsel at a critical stage).
[104] *Id.* at 732 (emphasis added).
[105] *Id*.
[106] *Id.* at 733.

Counsel's conduct constituted a *constructive* complete denial.[107] Where he failed to participate at any point in the trial and provided Mr. Lambert no defense at all, there was a constructive complete denial of counsel that triggers *Cronic*'s first exception. Therefore, to prevail in his postconviction motion, Mr. Lambert need not demonstrate prejudice. Because prejudice is presumed, he satisfies what would otherwise be the second *Strickland* prong without the need to granularly review the evidence.

## IV. CONCLUSION

For the reasons discussed in this Opinion, Trial Counsel performed deficiently in *Strickland* terms when he failed to provide Mr. Lambert a defense at his trial. Furthermore, because prejudice is presumed under these circumstances, Trial Counsel's conduct resulted in a violation of Mr. Lambert's Sixth Amendment Right to Counsel. As a result, the Court rejects the Commissioner's Report and Recommendation in its entirety. Mr. Lambert's postconviction motion must be **GRANTED**, and he is entitled to a new trial.

---

[107] *Id.* at 732.